Rich *v.* Flanders.

## RICH *v.* FLANDERS.

The constitutional provision against the passage of retrospective laws examined and discussed.

The term *retrospective,* like the term *ex post facto,* is a technical term; and while the latter applies only to criminal cases, and to those only in a particular way, so the former technically applies only to civil cases, and to those only in a particular way.

The construction which has uniformly been given by the courts of this State to the 23d section of our Bill of Rights, has made the first clause of the prohibition in that article to be synonymous in legal signification with a prohibition against the passage of "*retrospective*" laws; and the latter clause of the prohibition in that article to be synonymous with a prohibition against the passage of "*ex post facto*" laws.

Any statute which changes or affects the remedy merely, and does not destroy or impair vested rights, is not unconstitutional, though it be retrospective, and although in changing or affecting the remedy the rights of parties may be incidentally affected.

A statute changing the rules of evidence or of practice is ordinarily to be classed with those affecting the remedy; and though made to operate

Rich *v.* Flanders.

upon suits pending at the time of its passage, is not unconstitutional, unless it impairs contracts or destroys vested rights.

But a statute which in form affects the remedy, or the rules of evidence or of practice only, yet practically and in fact divests vested rights, is unconstitutional and void.

The statute of 1857, which removes the disqualification of interest in witnesses, and thereby enables parties to actions to testify, although it applies to cases in which the cause of action accrued and the rights became vested prior to its passage, is not unconstitutional; and the statute of 1858, in amendment of the act of 1857, and designed and intended to make the new rule of evidence apply to all cases, as well where the action was pending at the time of its passage as otherwise, when thus applied, is not unconstitutional; both these statutes affecting the remedy merely, and not impairing the obligation of contracts or destroying any vested right.

Courts will not declare a statute void, as being contrary to the provisions of the constitution, unless the nullity and invalidity of the act are placed, in their judgment, beyond all reasonable doubt.

No person can acquire a vested right in the testimony of any particular witness, or to have the testimony of such witness excluded upon trial.

Since the disqualification of interest has been removed so that parties to suits can testify, one partner may be a witness to prove the existence of the partnership, whether he be a party to the suit or not.

After proof of the existence of the partnership, an admission by one partner is competent evidence against the firm.

The declaration and admission of one partner, made after the dissolution of the partnership, concerning facts which transpired during its existence, are admissible in evidence as against the firm.

The plaintiff's specification and the defendant's offset, when properly filed in an action, become parts of the record, and may be used and referred to on the trial, and may go to the jury in the same manner as the writ and pleadings.

If a party to a suit, whether upon the stand as a witness or otherwise, is shown a paper containing written statements material to the issue and adverse to his interests, and he, after examination, admits that the statements therein contained are true, the paper containing the statements may go to the jury, in connection with his testimony or statements, as the admission of the party, and it makes no difference when, where, or by whom the statement was thus written.

ASSUMPSIT, brought by Shebuah Rich and John W. Smith, as partners, under the firm of Rich, Smith & Co.,

against Josiah Abbot and George M. Flanders, as partners, doing business in the name of Josiah Abbot, to recover a balance of $1447.51, due the plaintiffs for goods sold and delivered by them to Abbot alone, between March 11, 1854, and June 19, 1854, inclusive, but which went to the use and for the benefit of the firm, consisting of both Abbot and Flanders, the existence of the firm being unknown to the plaintiffs at the time of the sale and delivery of the goods. The writ was dated September 4, 1857. No service was made upon Abbot, and the suit was prosecuted against Flanders alone.

On trial, the plaintiffs were permitted, against Flanders' objection, to introduce said Josiah Abbot as a witness, who testified that he knew the plaintiffs; that in the winter, spring and summer of 1854, the plaintiffs were doing business at Dock Square, corner of Elm street, Boston, as partners, under the firm of Rich, Smith & Co.; that he traded with them there during that period as partners under that name and style, receiving from them, at the time, bills of the goods which he purchased, on which the name of the firm and the names of the partners, as set forth in the writ, were printed; that he bought goods of them, as partners, under the aforesaid firm-name, several times between March 11, 1854, and June 11, 1854, inclusive. This being the only evidence offered to prove the partnership of the plaintiffs, Flanders moved for a nonsuit, because no competent evidence had been offered which could go to the jury from which they might find the plaintiffs to have been partners, as alleged in the writ. The court overruled the motion.

Abbot further testified positively, distinctly and explicitly, that in February, 1854, a co-partnership was formed between himself and Flanders, in the clothing business, at Manchester; that, at the suggestion of Flanders, the business was carried on in his own name alone; that Flanders indorsed the notes given for their first purchase

of goods, and ultimately paid them; that Flanders fur-
nished the same amount of capital with which to purchase
goods as he did, and instructed him what representations
to make to those of whom he purchased goods in Boston ;
that Flanders examined the bills of purchases and the
goods purchased, frequently inspected the books kept in
the store, and at the close of business received much the
larger share of the proceeds, and that the partnership
continued from February, 1854, until the latter part of
June, 1854. Flanders specially objected that Abbot
could not testify to any facts tending to show the exist-
ence of a partnership between himself and Flanders, but
the court overruled the objection.

Abbot further testified that he bought goods of the
plaintiffs during the time named in the specification, to a
large amount; that he remembered the dates of some of
the purchases, and the kinds and prices of the goods
bought, and that upon the close of the partnership busi-
ness between himself and Flanders, there was due to the
plaintiffs, for goods thus purchased by him of them, a
balance of between $1400 and $1500; that he received
bills of the goods purchased of the plaintiffs at the time
of the purchases, and still had them, but not with him at
the time; that he examined those bills about a month
before and remembered the contents ; that he had exam-
ined the specification of the plaintiffs' claim used on the
trial, or one like it, the same not being made by himself,
and no evidence being offered as to when, where or by
whom it was made ; and that, according to the best of his
recollection, he bought of the plaintiffs, at the times indi-
cated in the specification, the various articles of goods
therein named, at the prices therein specified ; that he
thought the specification was a correct statement of the
goods he purchased of the plaintiffs, with the dates and
prices thereof, and had no doubt it was so; that the bal-
ance of the specification, as claimed by the plaintiffs, had

never been paid, but was still due them; that all the goods he purchased of the plaintiffs went into the store kept by himself and Flanders in his own name, and to the use and for the benefit of the firm; that Flanders knew of these purchases of the plaintiffs, and examined the bills and goods at the time they were received from the plaintiffs, and that he made the purchases in his own name alone, without disclosing his partnership with Flanders. Flanders objected to this testimony of Abbot, insisted that the plaintiffs must produce their books of account, and could only prove their claim by their books, item by item, separately, one after the other, as charged, and moved for a non-suit, because no competent evidence had been offered which could go to the jury from which they might find that any portion of the goods enumerated in the plaintiffs' specification had been sold and delivered by them to Abbot or gone to the benefit of the firm. The court overruled these objections and the motion. The court also permitted the specification of the plaintiffs' claim, used on trial and testified to by Abbot, to go to the jury, with the writ, against Flanders' objection. A specification had been filed with the clerk, said to be an exact copy of the original, used as a specification on trial, but it was not produced from the clerk's files or referred to by either party on trial.

There was some evidence tending to show a partnership between Abbot and Flanders, besides the testimony of Abbot.

Flanders was not offered as a witness on the trial, and this fact was discussed at considerable length by the counsel on both sides in their arguments. After the close of the charge, at the request of the counsel for the one party and the other, and without objection from either of them, the court stated to the jury that Flanders would have been a competent witness by the provisions of the statute, subject, however, to an exception to his compe-

tency arising from the alleged unconstitutionality of the statute referred to, but made no observations whatever in relation to the matter further than this.

The jury having returned a verdict in favor of the plaintiffs, Flanders moved that the same be set aside and for a new trial, because of alleged errors of the court in admitting testimony and overruling motions and objections as herein before stated, and because of their statement as to the competency of Flanders as a witness, as herein before particularly set forth, and the questions arising upon the case were reserved and assigned to the determination of the whole court.

*H. Foster*, and *Cross & Topliff*, for the plaintiffs.

*W. C. & S. G. Clarke*, and *Morrison & Stanley*, for Flanders.

SARGENT, J.*   In this case the action was not commenced until after the passage of the statute of 1857, making parties witnesses in certain cases.

This statute (Pamphlet Laws, ch. 1952, sec. 1), provides that "no person shall be excused or excluded as a witness in any civil suit or proceeding at law or in equity by reason of interest in the event of the same as a party or otherwise, except as is hereinafter provided, but such interest may be shown for the purpose of affecting his credit."   Section 3 provides that nothing in this act shall in any manner affect any suit or proceeding pending at the time of the passage of said act.

By the provisions of this act the parties to this suit were competent witnesses, and the statute of 1858 does not directly affect this case. That statute (Pamphlet Laws, ch. 2090, sec. 1), provides "that the deposition of any

* BELL, C. J., and BELLOWS, J., dissenting.

party, competent to testify as a witness by reason of the act of the legislature passed at the June session, A. D. 1857, entitled 'An act relating to the competency of witnesses,' or by reason of this act, may be taken and used in the same manner now by law provided for the deposition of witnesses in civil actions; *provided, however*, that said party shall not be obliged to answer any question or produce any document the answering or producing of which would tend to criminate himself." Section 2 provides that the provisions of the aforesaid act, of which this is an amendment, shall extend and be applied to all actions, suits and proceedings at law or in equity, excepting certain specified cases. Section 3 repeals the third section of the act of 1857. As there are several cases now before us in which the question as to the constitutionality of the above statutes is raised and is to be determined, we may as well consider the whole subject in this case as elsewhere. It may be that it would become necessary to consider the whole ground in this action, as the cause of action in the case we are considering accrued prior to the passage of the act of 1857; and if either law is unconstitutional as affecting vested rights, it might be difficult to say why the law of 1857 was not as objectionable as that of 1858. It is claimed that these statutes, and particularly that of 1858, are retrospective, and fall within the provisions of the 23d section of our Bill of Rights, which is as follows: "Retrospective 'laws are highly injurious, oppressive and unjust. No such laws, therefore, should be made for the decision of civil causes or the punishment of offences." If, when a man's right of action becomes vested, he has a vested right in the testimony by which he may sustain his claim, and a vested right to have all the testimony excluded on the side of the defendant, which was inadmissible as the statutes stood at the time when his right of action accrued, then it could make no difference whether the suit were com-

menced before or ·after the passage of such law. If the law in that way affected any vested right, it would be as much within the prohibition of the Constitution, when the suit was not commenced, as in case it had been. In that view the statute of 1857 was as objectionable, on constitutional grounds, as that of 1858. This is the doctrine of *The Society* v. *Wheeler,* 2 Gall. 139, and of *Dow* v. *Norris,* 4 N. H. 19, where Chief Justice *Richardson* says : " We imagine that no doubt can exist that a law operating retrospectively upon an existing cause of action, where no suit is pending, is as much to be deemed a retrospective law, for the decision of· a cause, and as much within the prohibition of this clause of the Constitution, as a law establishing a new rule of decision for an existing action." And it is believed the whole current of authorities favors this view of the subject. *Clark* v. *Clark,* 10 N. H. 386. To be sure, we here assume that by the· law of 1858 it was intended to make parties witnesses in all cases then pending, as well as those to be commenced after its passage, and in all cases without regard to the time when the cause of action or right of action accrued. We are aware that a different construction might possibly be given it, did we know nothing of its history. We are well aware of the ordinary and well established rule, to be adopted in the construction of statutes, that the legislature will not be presumed to have· intended that a statute shall have a retrospective action unless that intention is very clearly expressed ; *Dash* v. *Vanleek,* 7 Johns. 495 ; *Torrey* v. *Corliss,* 33 Me. 333 ; *Kennett's Petition,* 24 N. H. 139 ; *Colony* v. *Dublin,* 32 N. H. 432 ; and the statute of 1858, did it stand alone, might be construed as was the law of 1855 in regard to Road Commissioners, in the case last cited, and for the same reasons, did·we know nothing of the history of these acts of 1857 and 1858. But to those who are acquainted with such history, and the circumstances under which these several statutes were passed,

and who consider these circumstances in connection with the words of the statute, the context, &c., as it is proper that they should do in order to ascertain the intention of the legislature (*Aldridge* v. *Williams*, 3 Howard 1), there can probably be left no room for doubt that the legislature intended that the law of 1857 should apply in all cases where the suit had not been commenced, without regard to the time when the cause of action accrued; and that the legislature of 1858 intended that the statute passed by them should apply to all cases, whether pending or not, so that we come to the main question, whether these statutes, when thus construed, are in conflict with the section in the Bill of Rights forbidding retrospective laws.

And while it is no where denied that, in a limited government like ours, acting under a written constitution, irrepealable except by the people themselves, and which imposes many restraints upon the power of the legislature, and in which the judiciary is made a coördinate and independent branch of the government, the court have the power to declare the acts of the legislature void; and it may become their imperative duty to do so, in the faithful exercise of their constitutional powers and discharge of their duties, yet, when called upon to pronounce an act of legislation, passed with all the forms and solemnities requisite to give it the force of law, invalid and void, in consequence of its conflicting with some constitutional provision, courts will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light upon the subject; and will never declare a statute void unless the nullity and invalidity of the act are placed, in their judgment, beyond all reasonable doubt. *Cooper* v. *Telfar*, 4 Dallas 14; *Wellington, Petitioner*, 16 Pick. 95; *Lunt's Case*, 6 Gr. 412. The provision in our Bill of Rights extends somewhat farther

than any similar provision in the Constitution of the United States. That instrument provides, among other things, (art. 1, sec. 10,) that no State shall pass any "*ex post facto* law, or law impairing the obligation of contracts." As we understand the construction given by our courts to the last clause of the 23d section of our Bill of Rights, which provides that no retrospective law shall be made "for the punishment of offences," it is held to be synonymous with the clause in the United States Constitution which provides that no State shall pass "any *ex post facto* law." It has been held that the term, *ex post facto,* is a technical expression, and has reference only to penal and criminal proceedings, which impose punishments and forfeitures, and not to civil proceedings, which affect private rights retrospectively. *Calder* v. *Bull,* 3 Dallas 386. In *Fletcher* v. *Peck,* 6 Cranch 138, it was said that an *ex post facto* law was one which rendered an act punishable in a manner in which it was not punishable when it was committed. But no statute is considered *ex post facto,* however, which modifies the rigor of the criminal law, but only those which create or aggravate the crime, or increase the punishment, or change the rules of evidence for the purpose of conviction ; *Calder* v. *Bull, ante ; Ross & Riley's Cases,* 2 Pick. 165 ; and it was held, in *Woart* v. *Winnick,* 3 N. H. 474, that in all these respects the provision in our Bill of Rights in regard to the punishment of crimes should receive a similar construction. The other clause in the Bill of Rights, which provides that no retrospective law shall be made for the decision of civil causes, has also been the subject of judicial consideration and construction by the courts of this State. In *Merrill* v. *Sherburne,* 1 N. H. 213, it was held that the legislature had not judicial powers, and could not pass any law which should take from any citizen a *vested right ;* a right to do certain actions or possess certain things, which he has already begun to exercise, or to the exercise of which no

obstacle exists in the existing laws of the land; but that acts of the legislature will not be held to be opposed to these fundamental axioms of legislation unless they impair rights which are *vested*. In *Woart* v. *Winnick*, 3 N. H. 473, it is said that a retrospective law for the decision of civil causes may relate to the grounds of the action, or to the grounds of the defence, both of which seem to be equally protected by the constitution; that the legislature cannot annul by statute any legal ground upon which a pending action is founded, nor create any new bar by which such an action may be defeated; or, on the other hand, can any new ground for the support of an existing action be created by statute, nor any legal bar to such action be thus taken away. In this case, Chief Justice *Richardson*, after examining various decisions in our own and in other States, says: " The most attentive examination we have been able to give to the clause in the constitution we are now considering, has satisfied us that it was intended to prohibit the making of any law prescribing new rules for the decision of existing causes, *so as to change the ground of the action or the nature, of the defence.*" He considers and approves of the doctrine laid down in *Dash* v. *Vanleek*, 7 Johns. 477, and also in *Society* v. *Wheeler*, 2 Gall. 105, in which Judge *Story* held, that " upon principle, every statute which takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective." In *Dow* v. *Norris*, 4 N. H. 16, the principles laid down in *Woart* v. *Winnick*, are reiterated and reäffirmed, and the doctrine was extended, as we have seen before, so as to apply to a law operating retrospectively upon an existing cause of action, where no suit is pending. In that case a forfeiture had been incurred by the defendant in a civil cause, and a right to recover this penalty had, for certain purposes, vested in the plain-

tiff. It was held that a law then passed, which should by the terms of it divest the plaintiff of this right, must be deemed a retrospective law for the decision of a cause. Such law simply undertook to divest a vested right. In *Clark* v. *Clark*, 10 N. H. 386, Chief Justice *Parker* says: "A law may be retrospective in its operation if it affect an existing cause of action, or an existing right of defence, by taking away or abrogating a perfect existing right, although no suit or legal proceedings then exist." But we find, also, in this case, the principle laid down that the legislature have the right to vary the mode of enforcing the remedy, or to provide for the more effectual security of existing rights, or to pass laws which change existing rules, under which rights would be acquired by the lapse of a certain period of time, part of which has already passed; and it was there held, that a statute authorizing a divorce upon entirely new grounds, for causes which had not been causes of divorce before its passage, and for a cause which had accrued wholly before the passage of such law, was retrospective and void, except so far as it might apply to causes accruing after its passage. See, also, to the same point *Greenlaw* v. *Greenlaw*, 12 N. H. 200. *Gilman* v. *Cutts*, 23 N. H. 382, holds to the doctrine that a new statute is not retrospective, if the right to be affected by it has not become vested; otherwise, if it has. *Kennett's Petition*, 24 N. H. 139, reasserts the doctrine of *Woart* v. *Winnick*, and the opinion states that doctrine fully, while the marginal note of the decision does not state the doctrine fully, omitting to state that the new rule of decision, which is void if retrospective, changes the ground of the action or the nature of the defence—but the case is decided, like *Colony* v. *Dublin*, on the ground before referred to, of construing the statute so as to apply only prospectively. In *Willard* v. *Harvey*, 24 N. H. 351, the doctrine, as stated by Judge *Story*, in *Society* v. *Wheeler*, is reiterated and reaffirmed; and in delivering the opinion

in that case, Judge *Bell* meets and answers one of the positions which we understand to be relied upon by the defendant here, to wit: that no statute, by our Bill of Rights, is to have a retrospect beyond the time of its passage. · He then says: "The broadest construction of the constitutional rules which forbid retrospective legislation would require that all statutes affecting in any way a civil cause must be so entirely prospective that no new rule could be applied in the decision of a cause which did not exist when the right of action accrued. But a construction so broad as this could not be reasonably held, since the effect would be that no change could be made in the courts or course of justice which would affect the actions or causes of action then existing. The courts have, therefore, every where recognized a distinction between statutes affecting rights and those affecting remedies only. The rights of parties cannot be changed by legislation, but no party has a vested right in any particular remedy." And it was very truly and appropriately said in that decision, that (1) courts may be changed—one may be abolished and another substituted, or the jurisdiction transferred; (2) the process may be changed, as by abolishing arrests for debt; (3) new parties may be authorized to maintain suits, as executors, heirs, assignees, &c.; (4) the action may be changed, as by substituting case for debt or trespass, or proceedings in law for those in equity, or *vice versa;* (5) *new rules of evidence* and of *practice* may be established; and, (6) new final process may be established or substituted, and new modes of executing such process, or of preserving their lien; new exemptions of property, and new modes of relief from imprisonment may be provided; and that a party has no right to complain of any of these things, as violations of the constitution, so long as the laws leave to him a competent court bound to administer justice to him according to the rights the law gave him, when his right of action or defence became

Rich *v.* Flanders.

vested, with means and powers to accomplish its duties, and suitable process of which the party may avail himself.

We will here pause and make a few practical inquiries. Do these general laws of 1857 and 1858, which merely remove the disqualification of interest from all witnesses in all cases alike, affect any vested right of action or of defence ? Do they require that in any case more evidence shall be required, or that less evidence shall suffice, than what was required before ? Or do they not, rather, affect the remedy and provide the means and manner in and by which redress may be the more readily obtained, and rights that existed before be the more easily vindicated ? Do they contain any provision that causes shall be decided upon any different rule, as to the preponderance of evidence, from what existed before ? Do they require or allow any different evidence, either in kind or degree, from what was required or allowed before ? Or do they not, rather, require the same amount and kind of testimony as that required before, but simply provide that the same testimony may come to the jury through a different channel, and more directly than before ? Do these statutes change the state of any existing fact, or render that fact any more or less necessary to be proved than it was before ? Or do they not, rather, give to both parties, and all parties alike, some additional facilities for bringing such existing facts and circumstances to the notice of the jury ? Do they prescribe any new rule for the decision of existing causes, so as to change the ground of the action or the nature of the defence ? Do they destroy or impair any existing cause of action where no suit is pending ? Do they take away or impair any vested rights acquired under existing laws ? Do they create any new obligation, or impose any new duty, or attach any new disability in respect to transactions or considerations already past ? Or do they not merely provide a new rule of evidence or of practice, affecting the remedy, and not changing any

rights, of which, under the authority of *Willard* v. *Harvey*, the party has no right to complain, even though such rule may act retrospectively upon existing causes of action or pending suits ? Is it not evident that any of the changes specified in *Willard* v. *Harvey*, as being such as the party has no right to complain of, though acting retrospectively, would and must of necessity incidentally affect the rights of parties, though they would not destroy those rights? Can any one of these six changes, enumerated in that case, be made without incidentally affecting the rights of some parties ? And yet the parties have no right to complain of them. Would not any one of these changes, affecting the remedy primarily and principally, also affect rights incidentally, quite as often and quite as materially as do these laws that remove the disqualification of interest in witnesses ? Take, as an example, the case where the action is changed and proceedings in law substituted for those in equity, or *vice versa ;* and who that knows anything of the difference between the rules of evidence applied in the one case from those applied in the other, can fail to see that the rights of parties must be affected quite as much and as frequently, and often in very much the same way, though, as we shall have occasion to see, not so equally and justly, as they are by these statutes now under consideration ? And so of each of the other changes there enumerated which may be made without affording any party any cause of complaint.

There are several other decisions in our own Reports in which the subject of retrospective laws has been considered, but they establish no new or different rule in relation to them from the one already adduced; *Roby* v. *West*, 4 N. H. 287; *Miller* v. *Dennett*, 6 N. H. 109; *Stevenson* v. *Cofferin*, 20 N. H. 150; *Lakeman* v. *Moore*, 32 N. H. 413; *Colony* v. *Dublin*, 32 N. H. 432; *Pickering* v. *Pickering*, 19 N. H. 391; although it has been, and may well be doubted whether the authority (*Woart* v. *Winnick*) upon which the

Rich *v.* Flanders.

decision of the case last cited is claimed to be founded, extends quite as far as it is made to in this case by the reporter of Judge *Wilcox's* opinion.

1. From all these decisions we conclude that the word *retrospective,* as used in our Bill of Rights, and as generally used in a legal sense, is a technical term, not to be understood in a literal sense, but one that must receive and has received a legal interpretation. A retrospective law literally means a law which looks backward, or upon things that are past; or, if it be taken to be the same as retroactive, it means to act on things that are past. If it were to be understood in its literal meaning, without regard to the legal intent, then all laws having an effect upon past transactions, or laws by which the slightest modification should be made of the remedy for the recovery of rights accrued, or the redress of wrongs done, are prohibited equally with those which divest rights or impair the obligation of contracts. But we have seen that it has not received any such literal interpretation in this State, but that it has uniformly been held that statutes affecting the remedy, though in fact retroactive, are not considered retrospective in the legal sense of that word. And no such literal interpretation is to be given to the word retrospective, as used in the Bill of Rights. So, also, if understood literally, retrospective laws would apply to criminal proceedings as well as to civil, as would also the term *ex post facto,* if understood literally, apply to civil as well as to criminal matters. But each of these terms has, by a long series of authorities, been declared to be technical. So, taking the term *ex post facto* to apply to criminal matters only, and there has been a further limitation of the term in its legal use. If it were not so all laws relating to the punishment of crimes would be *ex post facto,* if passed after the commission of the offence. But we have seen that laws which mitigate the severity of the punishment are not objectionable on that ground. Thus we find that this term is lim-

ited in its legal interpretation, and made to apply not only to criminal proceedings alone, but also to laws acting in a particular way upon the punishment of those crimes. So retrospective laws are technically held to relate to civil causes only, and there is a farther limitation here — it is only such as affect vested rights that are technically retrospective; while all laws affecting the remedy, however retrospective they may be in the literal sense of that word, are not held to be retrospective according to the legal interpretation of that term.

And we find that the technical meaning which has been given to the clause in our Bill of Rights prohibiting the passage of retrospective laws for the decision of civil causes, is the same as that given in other States to a prohibition against retrospective laws generally. We have seen that the legal interpretation given by the courts in this State to "retrospective laws for the punishment of offences" makes that expression in the Bill of Rights synonymous with the technical term *ex post facto* laws. So also we find that the interpretation given by our decisions to the expression, "retrospective laws for the decision of civil causes," used as it was in the Bill of Rights, in connection with and in contradistinction to retrospective laws for the punishment of offences, makes it synonymous with the technical term, retrospective laws, as used in other States and in the common law.

In Texas, section 16 of the Declaration of Rights declares that "no retrospective or *ex post facto* law, or law impairing the obligation of contracts, shall be made;" and in *De Cordova* v. *Galveston*, 4 Texas 470, Chief Justice *Hemphill* says that "in attempting to ascertain the intent of the convention in prohibiting retrospective laws, we derive but little assistance from the literal meaning of the term, for that is no more expressive of the intent of the prohibition than is the literal meaning of the term *ex post facto*, of the intention, in prohibiting laws of the latter

Rich *v.* Flanders.

class." And after examining the term *ex post facto*, and referring to the decisions in *Calder* v. *Bull*, and other cases in which that term has received its legal interpretation, the learned chief justice proceeds : " The prohibition against the passage of retrospective laws seems equally to require explanation, with the inhibition against *ex post facto* laws ; for unless the meaning of the restriction is qualified by its object, and the acceptation in which it is to be received can thus be shown, it either means nothing more than is included in the restriction against *ex post facto* laws, and such as impair the obligation of contracts, or it has a latitude of signification which would embarrass legislation upon existing or past rights and matters, to such an extent as to create inextricable difficulties, and in fact to demonstrate that it was incapable of practical application." And it is held in that case that acts of the legislature are not to be considered as retrospective, unless they impair rights that are vested, because most civil rights are derived from public laws ; and if, before the rights become vested in particular individuals, the convenience of the State produces amendments or repeal of these laws, those individuals have no cause of complaint. And it is held that such laws as affect the remedy, however retroactive literally they may be, are not retrospective, according to the technical meaning and interpretation of that term, and that in many cases laws may justly, and for the benefit of the community and of individuals, relate to a time antecedent to their passage, such as laws of oblivion and of pardon. It is also said in that case that a distinction has always been taken between the obligation of a contract and the remedy for its enforcement ; and it has never been doubted that the legislature may vary the nature and extent of the remedy, so that some substantial remedy be in fact left. A State may at pleasure regulate the modes of proceeding in its courts, in relation to past contracts as well as future.

The constitution of Tennessee contains a prohibition against the passage of retrospective laws; (Constitution of Tennessee, art. 1, sec. 20;) but it has been held that under this prohibition a new or additional remedy might be provided for a just right already in being, for which no remedy exists, and which would be lost without such provision; *Hope* v. *Johnson*, 2 Yerg. 125, and *Vanzant* v. *Waddell*, 2 Yerg. 260; and also that an act of the legislature, authorizing bills in equity to be filed to defeat usurious contracts, applies to contracts entered into and judgments obtained before its enactment as well as after, and is not a retrospective law in the sense in which the constitution prohibits the passage of such laws, as it does not create or defeat any right, but merely regulates the remedy. *Brandon* v. *Green*, 7 Humph. 130.

2. We deduce from all the decisions upon this subject made by our own courts, this rule : that any statute which changes or affects the remedy merely, and does not destroy or impair any vested right—which does not destroy any existing right of action or of defence, or create any new ground of action or of defence, is not a retrospective law in the sense in which such laws are prohibited by the constitution, though acting upon past contracts and rights previously acquired and vested, even though in changing or affecting the remedy the rights of parties may be incidentally affected thereby. We think this doctrine not only deducible from our own decisions, but that the general current of authorities in this country sustains that view. *Kent*, in his Commentaries, (vol. 1, p. 455,) says : " A retrospective statute, affecting and changing vested rights, is very generally considered in this country as founded on unconstitutional principles, and consequently inoperative and void. But this doctrine is not understood to apply to remedial statutes, which may be of a retrospective nature, provided they do not impair contracts or disturb absolute vested rights, and only go to confirm

rights already existing, and in furtherance of the remedy by curing defects and adding to the means of enforcing existing obligations. Such statutes have been held valid when clearly just and reasonable, and conducive to the general welfare, even though they might operate in a degree upon vested rights."

3. We also deduce from our own decisions, and especially from *Willard* v. *Harvey, ante,* the doctrine that statutes changing the rules of evidence or of practice are to be classed with and treated like statutes affecting the remedy, and though acting upon past transactions, or retrospective literally, are not unconstitutional or retrospective in the technical sense in which that word is used in the Bill of Rights, even though the rights of parties may be incidentally affected thereby, unless they impair contracts, or destroy vested rights; for it is not denied that a statute may be passed, though in form applying to the · remedy or to the rules of evidence or of practice, which in fact and practically divests rights which are clearly vested—in which case they are both unconstitutional and void. We can readily imagine cases of this sort, and might illustrate by mentioning many supposed cases, where such might be the result. But we think it will be readily seen that they have and could have no analogy to the case now under consideration.

But let us look at a few cases outside the Reports of our own State, and see if the last two positions assumed by us, as well as the first, are not sustained by the authorities.

In *Kendall* v. *Kingston,* 5 Mass. 533, the court say: "Certainly the legislature may prescribe, and frequently have prescribed, rules of evidence by which parties must support their acknowledged rights." In *Ogden* v. *Saunders,* 12 Wheat. 262, Judge *Washington* says: "It is thus most apparent that whichsoever way we turn, whether to laws affecting the validity, construction or discharge of contracts, or to the evidence or remedy to be employed in

enforcing them, we are met by the overruling and admitted distinction between those which operate retrospectively and those which operate prospectively. In all of them the law is pronounced to be void in the first class of cases, and not so in the second." And in the same case (page 349), Chief Justice *Marshall* says: "In prescribing the evidence which should be received in its courts and the effect of that evidence, the State exercises its acknowledged powers. It is likewise in the exercise of its legitimate powers when it is regulating the remedy and mode of proceeding in its courts." In *Oriental Bank* v. *Freese*, 18 Me. 109, it was held that the legislature could not pass laws which should act retrospectively upon the rights of property or the obligation of contracts, yet that they might pass those which should thus act upon the remedy which the laws afford, to protect those rights or to enforce those contracts. In *Fales* v. *Wadsworth*, 23 Me. 553, it was held that a law, making protests evidence of the facts stated therein, applied to protests made before the passage of such law in suits then pending, as well as to future cases and protests; and for the reason that this statute did not affect the rights of the defendant, but only the mode of proceeding. Chief Justice *Whitman*, in delivering the opinion, says: "In whatever the defendant might have a vested right, it would not be competent for the legislature to violate it; but no one can have a vested right in a mere mode of redress provided by statute. The legislature may at any time repeal or modify such laws. They may prescribe the number of witnesses which shall be necessary to establish a fact in court, and may again at pleasure modify or repeal such law, and so they may prescribe what shall be and what shall not be evidence of a fact, whether it be in writing or oral; and it makes no difference whether it be in reference to contracts existing at the time or prospectively." And though this case is

cited approvingly as authority in *Willard* v. *Harvey*, yet we are not called upon in the present case to go to the extent which that decision might carry us. In *Foster* v. *Essex Bank*, 16 Mass. 245, Chief Justice *Parker* says : " The truth is, there is no such thing as a vested right to do wrong, and a legislature which in its acts, not expressly authorized by the constitution, limits itself to correcting mistakes, and to providing remedies for the furtherance of justice, cannot be charged with violating its duty or exceeding its authority." In *Thayer* v. *Seavey*, 11 Me. 292, Chief Justice *Mellen* says : "No one has ever doubted the right of the legislature of Massachusetts or this State to grant chancery powers to the supreme court of these States respectively ; yet in some important particulars such powers, when exerted, seem very seriously to interfere with what are called the vested rights of the defendants ; one of which is to stand upon his denial of the plaintiff's claim, and compel him to prove it if he can. But in a court of equity the plaintiff may appeal directly to the conscience of the defendant, and compel him to answer on oath whether the facts stated in the bill are not true ; and if so, to condemn him out of his own mouth."

And *Daniel Webster*, in his argument in *Foster* v. *Essex Bank, ante,* which argument seems to have been clearly approved of as correct in principle, by the court in their opinion, says : " A distinction must be made between acts which affect existing rights, or impose new obligations, and acts which give new remedies for existing rights, and enforce the performance of previous obligations. This statute (speaking of the one then under discussion) is as strictly remedial as the late statute, giving further relief in equity, and yet no one doubts the propriety of applying the provisions of that statute as a remedy to enforce the performance of contracts previously made. Perhaps it (that statute) might have afforded a remedy in this case, but it would be liable to all the objections which have

been urged against the present act, the whole amount of which objections is nothing more than that a new remedy is given by law to enforce existing contracts. This statute is not retrospective in any just sense of that term. A retrospective law has been defined to be a law which takes away or impairs vested rights. But if it be the object and operation of this law to confirm and enforce rights, and to provide adequate and suitable remedies for the violation of them, it cannot be within the definition." In *Webb* v. *Den*, 17 Howard 576, which was heard before the Supreme Court of the United States upon a writ of error brought in the Circuit Court of the United States for the Middle District of Tennessee, it was held that although the constitution of the State of Tennessee contains a provision prohibiting the passage of retrospective laws by its legislature, yet that an act of the legislature of that State providing that where a deed had been registered for more than twenty years, it should be deemed and taken to have been lawfully registered, though operating in respect to deeds registered before, and offered in evidence after its passage, is not a retrospective law within the meaning of the constitution of that State. The facts in the case were that a copy of a certain paper, purporting to be a deed of real estate, was offered in evidence as proof of title. This was objected to, upon the ground that the deed, as appeared from the copy, was not duly proved, acknowledged or authenticated, so as to entitle the same to registration ; that there was no proof of the acknowledgment of one of the parties, and that the registration, being unauthorized, a copy could not be read in evidence. And it was admitted that the acknowledgment certified with this deed was not such, nor was it certified under the seal of the court in the manner as prescribed by the registration laws then in force. This deed had been recorded in 1809, and remained in this position until 1839, when an act was passed by the legislature of Tennessee, providing " That

whenever a deed has been registered twenty years or more, the same shall be presumed to be upon lawful authority, and the probate shall be good and effectual, though the certificate on which the same has been registered has not been transferred to the register's books, and no matter what has been the form of the certificate of probate or acknowledgment." Under the provisions of this statute the copy was held admissible, though there was no pretense that it could have been properly admitted before. The legislature had changed the rule of evidence, and made that admissible as evidence, even of title to real estate, which was clearly, by the laws existing previously, incompetent. Yet it was held by the highest tribunal in this country, and that without any dissenting voice, that this statute was not a retrospective law, under the constitution of Tennessee. Judge *Grier*, in delivering the opinion of the court, and referring to this statute of 1839, which it seems was to apply in all cases, whether pending at the time of its passage or not, says : " It is not a 'retrospective law,' under the constitution of Tennessee, which the legislature is forbidden to pass. It is prospective ; declaring what should thereafter be received in courts as legal evidence of the authenticity of ancient deeds. The registration being thus *validated*, copies of such deeds stand on the same footing with other legally registered deeds, of which copies are made evidence by the law."

This decision would seem to carry the principle much further than we are called upon to go in the case before us. We think these authorities fully sustain all the positions we have taken in the case under consideration.

But I wish to advert to a few other matters which seem relevant. Our statute conferring chancery powers upon the Superior Court of this State, (Pamphlet Laws of 1832, p. 69) provides that " said Superior Court shall have chancery powers and jurisdiction in cases of gifts, grants, devises,

donations and appointments of any lands, tenements, rents, hereditaments corporeal or incorporeal ; goods, chattels, money, securities for money, or other personal estate whatever, *which heretofore have been,* or hereafter may be given, granted, made or appointed to or for any charitable uses, and in all cases of fraud, trust, accident or mistake," &c. ; and we may add that it probably was never questioned by the bar or the court of this State that this act was constitutional, though, by express provision, it was made to operate on past contracts, and upon rights that were unquestionably vested ; and yet that statute changed the rules of evidence in thus changing the remedy quite as much if not to a much greater extent than do those laws of 1857 and 1858. The legislature of this State early passed acts authorizing the courts to send certain cases to one or more auditors, where the parties were to be allowed and might be required to testify ; without any saving clause to cover pending suits ; and we are informed and believe that those acts were considered by the court and bar as being applicable to pending causes as well as those to be commenced after their passage, and that such suits, thus pending when the acts were passed, were referred by the courts to auditors, upon the motion of either party, whenever the action was a proper one for such reference. Again, in 1857, the legislature of this State passed a law providing "that all legal proceedings hereafter commenced against any individual stockholder in any corporation in this State, for the collection of a debt against said corporation, shall be by bill in chancery, and not otherwise," which law, as it applies to existing contracts, and rights that are vested, it is believed will, in thus changing the remedy, affect the rights of parties more generally and more seriously than the changes introduced by the laws of 1857 and 1858, in making the parties witnesses, can possibly do ; and yet this court have passed upon and given construction to that statute, and

Rich *v.* Flanders.

applied it in all its length and breadth, upon our present circuit (*Hadley* v. *Russell*) without any suggestion from the counsel or the court that it might be unconstitutional, by reason of its thus affecting, though incidentally to be sure, vested rights.  By the operation of the statute we are now considering, both parties are put upon an equality, while, by changing the remedy from an action at law to a proceeding in equity, and making it relate to past contracts and transactions, it gave the plaintiff certain rights to the testimony of the defendant, without giving the defendant any corresponding advantage.  And we think we may safely hold that if our statute of 1832, before cited, was constitutional—which no one doubts—then the statutes of 1857 and 1858, in relation to witnesses, are no less so. These laws are not to apply to single individuals or classes of individuals, but are of universal application.  They merely remove a disability which existed before, and the change they effect is merely to transfer the question of credibility from the court to the jury.  Before, when interest was shown, the court said, under the rule then existing—that of the common law—that the witness was not, on account of such interest, however small it might be, to be credited at all, and therefore he must be entirely excluded.  Now the rule is, that this matter shall be left to the jury.  They may, upon hearing the witness, conclude that the old rule was correct in a particular instance, and that the witness, whether party or not, is so biased by his interest that he is not to be credited, and will lay his testimony out of the case; or they may consider it of more consequence, according to the circumstances.  This is all the change these laws make in the rule of evidence.  It is difficult to see how a party can have a vested right in the testimony of a particular witness, or a vested right to have the testimony of a particular witness excluded upon trial, any more than he can in a

particular remedy, which it has been repeatedly held, in this State and elsewhere, that he cannot have. We believe no instance can be found where any court have held to this doctrine, and we think it will be long before any one will so hold. But this must be so held, or the laws we are considering are not unconstitutional.

But let us assume, for a moment, that such rights may be acquired, and that every party acquiring a right has also a vested right to have admitted upon trial, all the testimony upon which his right depends, that was competent when the right became thus vested, and to have all, not thus competent at that time, excluded, and at the outset, certain difficulties suggest themselves. Suppose, at the time the right of a certain plaintiff becomes vested, there is a witness who knows all the material facts to sustain his case, and who is then competent to testify. But before trial that witness is convicted of some crime, and sentenced to the State-prison. What has become of the plaintiff's vested right to his testimony? The witness has become disqualified by operation of law. Again: suppose that when the plaintiff's right became vested, there was an important witness for the defendant, confined in the State-prison, whose term of service was to continue ten years; but before the trial comes on the governor of the State should pardon the criminal, and thus remove the disqualification as a witness in the case. What would become of the plaintiff's vested right to have all the testimony excluded upon trial which was incompetent when his right of action became vested? But again: suppose that instead of the governor's removing the disqualification in the witness to testify by a pardon, the legislature should do the same thing by statute, as was done by the legislature of Massachusetts (Act of 1852, ch. 312, sec. 60; *Newhall* v. *Jenkins*, 2 Gray 563;) the result would be the same as in the other case. And must it be held, that although the witness would be competent in the

one case, when his disability had been removed by the governor, yet that he could not be competent when the same thing had been done by the legislature? Is any such distinction as this required by the constitution? If so, it would seem to require a distinction where there was little if any difference, and without any good reason.

But it may be said there are no rights aside from the evidence upon which they are supported. It might with equal propriety be said that there is no right without a remedy. But it has been held, as we have seen in a State having a similar constitutional provision to ours, that new remedies may be provided for a just right already in being, and for which no remedy exists, and which would be lost without such provision. And shall it be deemed unconstitutional, when the legislature, instead of giving a new remedy for a right which had to that time existed without remedy, shall remove the disability under which a witness labored, and allow him to testify to facts within his knowledge; facts which existed before, and were as well known to him before as now; but which, by some arbitrary rule of the law, he was prevented from being allowed to state—facts which were material to the success of justice, and without a statement of which wrong and injustice would triumph, and truth and right be overborne?

We think that the legislature do well to open all the channels of light and truth which they properly and constitutionally can do, in the trial of all causes, and courts should not and will not be disposed to retard this movement, and shut out the light, unless compelled by a stern constitutional necessity to do so. Justice, truth and righteousness seek the light. It is only error, falsehood and wrong that fear and shun the light of truth.

We find that the legislatures of Vermont and Massachusetts have both set an example for our own in the course they have taken. In Vermont, in 1852, the legislature passed a law similar in its provisions to ours of 1857.

The third section of that act provides that the act shall not affect any suit brought before and pending at the time of its passage. In 1853 the legislature of that State repealed this provision, (the third section) leaving the law that all persons in all cases who had before been excluded upon the ground of interest, with certain specified exceptions, might testify, without any restriction as to pending causes; and the courts there construe the law of 1853 as being applicable to pending suits in the same way that we hold our statute of 1858 to be, and no question has been raised by the bar in that State, as we find from an examination of their Reports upon that subject—the best evidence perhaps that neither the court or the bar of that State consider either of their statutes unconstitutional or otherwise objectionable.

In Massachusetts, in 1851 and 1852, statutes were passed removing the disqualification of interest in all cases except of parties to the record; and in 1856 and 1857 further enactments were passed, making parties witnesses in all cases, with similar exceptions to those contained in our statute; and in none of these statutes was there a saving clause of actions then pending. And the courts there have held that they all applied to pending cases, as well as those to be commenced after their passage; and we learn from good authority that no question has ever been raised in that State, of vested rights or retrospective action, but that the bench and the bar of that State have, *uno consensu*, considered this as a branch of remedial justice, and entirely within legislative control.

It may be asserted that these laws were passed, and that many of the decisions to which we have adverted were made, in States where the constitution contained no provision like ours prohibiting retrospective laws, and that those decisions are not applicable here. But we find no substantial difference in this respect, in the different States where this question has been discussed and settled, be-

tween those where there is a prohibition like ours in their constitution, and those where there is none. We have already seen that in Texas and Tennessee, where retrospective laws are prohibited, as they are in our constitution, yet their decisions hold that only such laws as by retrospective action destroy or impair vested rights, are thus prohibited by the constitution, and not such laws as affect the remedy merely, or even such as, affecting the remedy primarily and principally, yet incidentally affect the rights of parties, provided the remedy be not entirely taken away, or so incumbered as to render it useless or impracticable; *De Cordova* v. *Galveston, ante; Officer* v. *Young,* 5 Yerg. 320; and we find in New-York, where there is no constitutional prohibition whatever, even as to *ex post facto* laws, or retrospective laws of any kind, the decisions of their courts quite as strong and uniform against retrospective laws, such as affect vested rights, (for those only are retrospective any where, according to the technical and universally received legal definition and interpretation of that term) as well as against *ex post facto* laws, as our own, or those of any other State in the Union. See *Dash* v. *Vanleek, ante,* which is quoted as good law in all our decisions.

In Massachusetts, also, where there is no constitutional prohibition, in express terms, against passing retrospective laws—the only prohibition there being against passing *ex post facto* laws—we find the whole current of authorities coincide with our own on this general principle; and it is held, in *Ross's Case,* 2 Pick. 169, that if a provision of a statute were *ex post facto* in its operation, the court would decide that it was invalid upon general principles of law, even if the enactment of *ex post facto* laws were not prohibited by any constitution, either state or national. And so of retrospective laws: we find the decisions going the same length against them in those States where the con-

stitution is silent concerning them, as where they are prohibited.

In the State of Vermont, where there is no constitutional provision against retrospective laws, it is held that "every law that takes away or impairs rights, vested agreeably to existing laws, is retrospective. To say the least of such laws, they are generally unjust, and neither accord with sound legislation nor the fundamental principles of the social compact." *Briggs* v. *Hubbard,* 19 Vt. 91.

In Maine, whose constitutional provisions on this subject are similar to those of the United States constitution, the prohibition against retrospective laws being omitted, the courts hold that all laws which are technically retrospective are void. Even in *Fales* v. *Wadsworth,* before cited, in which the court came to a conclusion which is perhaps as objectionable to those who differ from us as any that can be found in all the reported decisions of that State, the doctrine is plainly stated, that "In whatever the defendant might have a vested right, it would not be competent for the legislature to violate it." And the decision is placed upon the ground, clearly and explicitly, that the statute then under consideration, though literally retrospective in its operation, "did not affect the *rights* of the defendant, but only the mode of proceeding." And whether we may or may not be willing to endorse all the *dicta* of the learned chief justice who delivered the opinion in that case, yet it may perhaps be difficult to see wherein the court, in deciding the real question raised in the case, have gone further that the Supreme Court of the United States have done in *Webb* v. *Den.*

In Louisiana, the constitution, after prohibiting *ex post facto* laws, and such as impair the obligation of contracts, adds, "nor shall vested rights be divested unless for purposes of public utility, and for an adequate compensation, previously made;" which is merely substituting, as we have seen, for the technical term, retrospective laws, the

well established and common definition and interpretation of that term. And *Kent*, in his Commentaries, as we have before seen, states that a retrospective statute, affecting and changing vested rights, " is very generally considered in this country as unconstitutional and void," though the fact is otherwise in regard to remedial statutes. He does not make any distinction between the different States whose constitutions might differ in their provisions upon that subject, and probably for the best of reasons—that he could find no such difference. Indeed, the statement in our Bill of Rights, section 23, is but an assertion of a general principle, which was understood to be of universal application in all free governments; a principle which should be, and it is believed has been, applied in all the States of this Union, without regard to the particular form of their constitution. *Woodbury*, J., in *Merrill* v. *Sherburne*, in alluding to the prohibitions contained in section 23 of our Bill of Rights, speaks of them as "fundamental axioms of legislation." And *Richardson*, C. J., in *Woart* v. *Winnick*, in speaking of retrospective laws, such as divest vested rights, says: "Retrospective laws of that kind deserve to be denounced, as they are denounced in our Constitution, as highly injurious, oppressive and unjust. They have been denounced by the most sound and intelligent jurists and statesmen in every age."

It is believed that no decision can be found in any of the States where it has been held that a law may be passed, which should act retrospectively, divesting vested rights, and where the decision has turned and been based upon that doctrine. To be sure, we find that courts of different States vary very much in particular instances in the conclusions they arrive at, as to whether certain acts of the legislature divest or impair vested rights, or whether they merely act upon and affect the remedy. But as a general rule they all claim to decide according to the same general principles, however different their conclusions.

The difference mainly consists in the different application of the principle.

We come to the conclusion, then, that no one can have a vested right in the testimony of any particular witness, any more than he can in any particular remedy, or a vested right to have the testimony of any particular witness excluded upon trial; that disabilities may be removed by general laws, so that witnesses may be allowed to testify who were incompetent before, and that, too, in cases pending at the time of the removal of such disability, without destroying or changing any vested right, and that the statutes in question—those of 1857 and 1858—when applying to vested rights and pending suits, affect the remedy, the course of proceeding, the rules of evidence and of practice, and do not impair the obligation of contracts, destroy vested rights, or affect them except incidentally, and as all remedial statutes may properly do, without giving any party any cause of complaint.

The first exception—that to the admission of Josiah Abbot, one of the defendants, as a witness—being, therefore, overruled, the decision of this question also settles another question—that concerning the partnership of the plaintiffs, as Abbot states that he is personally acquainted with the plaintiffs, and knows that they were doing business as partners at the time referred to, and at the place designated by him; and that he then and there, on different occasions, did business with them as partners, under the name and firm of Rich, Smith & Co., and describes their method of doing business, and the bills they gave him, &c. And it would seem that more direct testimony could hardly be expected in any case, unless it should be held necessary to produce the articles of agreement, if written, or to prove by a partner that a parol agreement existed, and the terms of it. But it is well settled that no such proof is required, and that the proof here introduced was sufficient. 2 Gr. Ev., sec. 479; 2 Saund. Pl. & Ev. 705. The motion

for a nonsuit upon this ground was, therefore, properly denied. The position, also, that Abbot could not testify to any facts tending to show the existence of a partnership between himself and Flanders, cannot be sustained. In *Wright* v. *Boynton*, 37 N. H. 9, it was held that though Haywood was named in the writ as a defendant, yet, as no service was made upon him, he was not a party to the suit so as to render his evidence inadmissible on that account, but yet that his testimony was incompetent to prove the existence of a partnership between himself and the defendant, on the ground of interest. But this ground of objection is now removed, and there is no longer any doubt of the competency of the evidence which was admitted, as bearing upon the question of the existence of the partnership, leaving the question of interest in the witness to be considered by the jury as affecting his credibility. I do not understand that it is objected that the testimony of Abbott upon this point is not competent, as tending to show a partnership between him and Flanders, provided he can be a competent witness at all upon that subject, as it clearly tends to show, as between him and Flanders, a community of interest in the property, and also in the profits, and that makes a partnership. 2 Gr. Ev., secs. 481, 482.

Nor was it necessary for the plaintiffs to produce their books of account. In fact, there is no evidence stated in the case tending to show that these articles were ever charged upon any book at all. But admitting that they had been so charged, there was then no necessity of their producing their books, and the motion for a nonsuit upon this ground was properly denied. The books of account of a party, fortified by his supplementary oath, is a kind of evidence not admissible at common law, but they have been admitted as evidence in favor of the party, very generally, in this country, by reason of the great convenience in practice of this method of proving the ordinary deal-

ings between individuals.  *Poultney* v. *Ross,* 1 Dallas 238;
*Prime* v. *Smith,* 4 Mass. 457; *Voshburgh* v. *Thayer,* 12
Johns. 461; *Beach* v. *Mills,* 5 Conn. 496; *Dunn* v. *Whit-
ney,* 1 Fairfield 9·; *Woodes* v. *Dennett,* 12 N. H. 510.  The
evidence thus furnished has ever been considered, how-
ever, as inferior to the oral testimony of disinterested
witnesses; and the party might always, if he chose, waive
his books altogether, and rely upon common law proof, by
witnesses or otherwise, although his books may contain
the account sought to be recovered.  *Pecker* v. *Hoyt,* 15
N. H. 143.  And in this case the plaintiffs undertook to
prove their claim without producing their books, if they
had any, and without testifying themselves, or offering
any evidence, except the admissions of Abbot.  For,
although prior to the passage of the act of 1857, chapter
1952, a partner, not a party to the suit, could not be ad-
mitted to testify as to the existence of the partnership
between himself and another; and although the admis-
sions of one partner that he and one or more other per-
sons were partners, was only admissible as tending to
charge himself, and not as affecting any other persons, or
as tending to charge them as partners, still, when the fact
of the existence of the partnership is proved, the admis-
sions of one partner are competent evidence against the
firm, as to any contract made during the continuance of
the partnership, even where, as in this case, the partner
whose admissions were sought to be introduced was not
made a party by having the writ served upon him; and
where the admissions were made long after the dissolu-
tion of the partnership.  *Mann* v. *Locke,* 11 N. H. 246.
The declarations of a partner, made after the dissolution
of the partnership, concerning facts which transpired pre-
vious to that event, are held to be admissible in evidence
as against the firm.  3 Kent's Com. 51.  This was the
rule before the passage of the law of 1857, making parties
witnesses; and that statute, although giving each party

Rich *v.* Flanders.

increased facilities for proving facts that existed before, and compelling the opposite party to admit existing facts upon the stand, against their interest, and which they might perhaps be slow to admit, were it not for such compulsion, yet this provision of the statute does not make the statement of the party upon the stand as a witness against his interests, any the less an admission, than as though the same party had voluntarily admitted the same facts before the new statute, and that admission had been proved against the firm by a third person as a witness; neither does it alter the effect of such an admission, when thus made.

The testimony of Abbot was properly received in regard to the particulars and amount of the indebtedness to the plaintiffs, and the specification of the plaintiffs' claim, as thus sworn to by Abbot, was properly allowed to go to the jury, not upon the ground of a witness refreshing his recollection by reference to written memorandum, but upon the ground that the testimony of Abbot, in connection with this specification, amounts to an admission by one of the partners that the plaintiffs' claim, as charged in the specification, is correct, and that it has never been paid. And this admission of one partner, after the evidence tending to show the existence of the partnership between Abbot and Flanders, was properly received against the firm.

If a party to a suit should be presented with a paper, purporting to contain a statement of facts directly against the interest of such party, and material to the issue, and the party, after reading and examining such statements, should deliberately admit that all the statements contained in such paper are true, there could of course be no doubt that the fact of such admission, together with the paper containing the statements thus admitted by the witness, would be evidence to go to the jury. And could it make any difference who wrote those statements, or how or

when or where they were written? The fact that the party admitted their truth is all that is material to make the paper competent to go to the jury as evidence of the party's admission. It would be entirely immaterial whether the party wrote the statements himself or not, or whether he knew anything about the paper prior to its being presented to him; neither could it make any difference if the party was called upon the stand as a witness, and should there make the same admission,—the paper in that case could go to the jury as the admission of the party, or a part of such admission. The plaintiffs' specification and the defendant's offset, when properly filed in a cause, become parts of the record, and may be used and referred to on trial, and may go to the jury, in the same manner as the writ and other pleadings. And if the paper used on the trial, and allowed to go to the jury, was an exact copy of such specification thus filed, no one has been injured by the change. If the paper used was not an exact copy of the specification filed, it might be doubtful, if it were necessary to decide that question, whether the court would not hold that the party was too late in taking his exception, after the paper had been used as the specification during the opening and entire trial of the cause, and had been referred to and examined by the witnesses, and that without objection, until the jury were ready to receive the proper papers, and retire and find the verdict. But as it was clearly admissible upon the first ground stated, this question becomes immaterial.

We see no valid ground of objection to the statement of the court to the jury in regard to the competency of Flanders as a witness, and in regard to the exception that might have been taken to his testimony, if he had testified. It was made at the request of parties, and without objection made at the time; and if it had been objected to by either or both parties, it could have made no difference, as there was nothing in the statement in any way

improper, or in the least calculated to prejudice the rights of either party with the jury.

o     There must be judgment on the verdict.

BELL, C. J.   Every statute which takes away or impairs a vested right acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect of transactions or considerations already past, must be deemed retrospective in its operation, and opposed to those principles of jurisprudence which have been universally recognized as sound.   *Society* v. *Wheeler,* 2 Gall. 139; *Dash* v. *Vanleek,* 7 Johns. 503.   Legislative enactments ought to be prospective, never retrospective, in their operation.   2 Inst. 292; Dig. 50, 17, 75; Code 1, 14, 7; Brac., L. 4, fo. 288.   In those countries where the legislative power is under no restraint, but is in theory omnipotent, as well as in those States where the legislature is not subject to any constitutional restriction in this respect, it is a settled rule of construction that laws shall be construed as prospective, and never as operating retrospectively, unless they are expressly made applicable to past transactions and to such as are still pending.   Code 1, 14, 7; 6 Bac. Ab., Stat. C.; *Hitchcock* v. *Way,* 6 Ad. & El. 943, 951; *Paddon* v. *Bartlett,* 3 Ad. & El. 895; *Perry* v. *Skinner,* 2 M. & W. 471, 476; *Doe* v. *Pye,* 5 Q. B. 767, 772; *Thompson* v. *Lark,* 3 C. B. 540; *Colony* v. *Dublin,* 32 N. H. 434; *Dash* v. *Vanleek,* 4 Johns. 495; *Torrey* v. *Corliss,* 33 Maine 333; *Morse* v. *Gould,* 1 Kern. 285; *Terrington* v. *Hargraves,* 3 M. & P. 137.

By the Bill of Rights of the Constitution of New-Hampshire, it is declared that " retrospective laws are highly injurious, oppressive and unjust.   No such laws, therefore, should be made, *either for the decision of civil causes* or the punishment of offences."   And we think that there is no principle established by their constitution of which the citizens of the State have more just reason

to be proud than of this, as the principle is every where conceded to be just, and there is none which legislative bodies are under so constant an outward pressure to disregard, and none the disregard of which is so likely to be attended by gross injustice.

In no other State of the Union is the power of the legislature so limited as in this, except the States of Tennessee, Missouri, Texas, and perhaps Louisiana.

In Vermont, Connecticut, New-York, and some other States, it is supposed there is no restriction in the State constitutions on the subject. In Massachusetts, Maryland, &c., the prohibition is confined to *ex post facto* laws; and in Maine, Pennsylvania, and most of the western States, *ex post facto* laws and laws impairing the obligation of contracts are forbidden.

The constitutional provision in this State has repeatedly become the subject of judicial construction. In the case of *Merrill* v. *Sherburne*, 1 N. H. 198, it was held, in accordance with repeated decisions of an earlier date, not printed, that an act of the legislature granting a new trial of a case finally decided in the Superior Court, was unconstitutional, because it was an act in its nature judicial, and because it was retrospective in its operation; and *Woodbury*, J., says: "Acts of the legislature must be in substance of a legislative character. Their form is immaterial. They must be laws; must be confined to subsequent occurrences; for the very nature and effect of a new law is *a rule for future cases.* * * * * Acts of the legislature which look back upon interests already settled, or events which have already happened, are retrospective, and our constitution has in direct terms prohibited them, because 'highly oppressive, injurious and unjust.' "

In the case of *Society* v. *Wheeler*, 2 Gall. 105, decided in the United States Circuit Court for this District, it was held that a statute, allowing compensation for improvements made by a tenant, who had been in possession

under a supposed legal title, for more than six years, was a retrospective law for the decision of a civil cause, within the prohibition of our constitution, where the action was brought within six years after the passage of the law.

The repeal of the statute of limitations was held to be inoperative and void in the case of *Woart* v. *Winnick*, 3 N. H. 473, as a retrospective law, when attempted to be applied to a cause of action already barred by the repealed statute at the time of the repeal; and it was said by *Richardson*, C. J., that a retrospective law for the decision of civil causes is a law prescribing the rules by which existing causes are to be decided, upon facts existing previous to the making of the law. Instead of being rules for the decision of future causes, as all laws are in their very essence, retrospective laws for the decision of civil causes are in their nature judicial determinations of the rules by which existing causes shall be settled upon existing facts. As, on the one hand, it is not within the constitutional competency of the legislature to annul by statute any legal ground on which a pending action is founded, or to create any new bar by which such action may be defeated, so, on the other hand, it is believed that no new ground for the support of an existing action can be created by statute, nor any legal bar to such action be thus taken away. (See *Wright* v. *Oakley*, 5 Met. 400.)

In the case of *Dow* v. *Norris*, 4 N. H. 16, it was held that a law operating retrospectively upon an existing cause of action, where no suit is pending, is as much to be deemed a retrospective law for the decision of a cause, and as much within the prohibition of this clause of the constitution, as a law establishing a new rule of decision for an existing action.

In *Roby* v. *West*, 4 N. H. 287, the doctrine of *Society* v. *Wheeler* and *Woart* v. *Winnick* was applied in a case where it was contended that the repeal of an act which rendered a transaction illegal, obviated that objection; but the court

held that the repealing act, having been passed after the commencement of the action, to construe it to take away any ground of defence under the act so repealed, would give it the operation of a retrospective law for the decision of a civil cause, which is prohibited by the constitution.

In *Clark* v. *Clark*, 10 N. H. 380, it was decided that a statute which attempts to confer authority upon the court to grant a divorce for matters already past, and which, at the time they occurred, furnished no ground for the dissolution of the marriage, is a retrospective law for the decision of a civil cause, and therefore unconstitutional. The same rule was held in *Greenlaw* v. *Greenlaw*, 12 N. H. 200, where it was attempted to obtain a divorce on the ground of a conviction of crime and imprisonment in the State prison, which were made cause of divorce by a law passed after the commitment.

In *Pickering* v. *Pickering*, 19 N. H. 391, it was held that the statute allowing several replications was unconstitutional in relation to suits commenced before its passage; and it was said by *Wilcox*, J., that "retrospective laws for the decision of civil causes, being forbidden by the Bill of Rights, all laws otherwise unobjectionable are and must be consequently so limited in their operation as not to be obnoxious to the spirit and principle of the prohibition. Its interpretation has been the subject of numerous decisions, and has become well defined. It applies not only to those laws which relate immediately and primarily to the rights of persons and property, but to those subsidiary laws also, of which the object is to afford the means and prescribe the mode of enforcement of the former. And if, under either of these classes of laws, rights have become vested and perfect, to permit them to be affected by a change in the laws is so far to give the altered or new law a retrospective action."

In *Kennett's Petition*, 24 N. H. 139, it was held, in the case of a petition for a new highway, that a statute which

prescribed a new rule for the decision of such an existing suit, was retrospective, and in such a case inoperative. This doctrine is recognized and approved in *Lakeman* v. *Moore,* 32 N. H. 413.

In exact accordance with all these cases is *Willard* v. *Harvey,* 24 N. H. 344, where the question for the decision of the court was, whether a statute limiting suits upon a judgment to twenty years, where there had previously been no limitation, was prohibited by the constitution. The constitutional provision, as settled by the decisions just cited, was fully admitted by the counsel and stated by the court; but it was insisted, and so held by the court, that the constitutional provision which forbids retrospective legislation does not ordinarily apply to statutes affecting *the remedy alone,* but only to those laws which are made *for the decision* of civil causes or the punishment of offences. But if a statute, professing to affect the remedy, will, in any particular case or class of cases, operate so as to change the decision, or to change or defeat the right or the defence, it will be unconstitutional, and must be held not to apply to such a case, or to be wholly void.

The qualification was stated as distinctly as the rule, and it seems to us to be an essential limitation of it. The result of the decision is stated to be that a statute which changes or modifies the remedy of a party for the recovery of any claim ; which limits or restricts the process by which it is to be enforced, or changes the tribunal by which it is to be heard, or reduces or enlarges the time within which the action may be prosecuted, is not within the prohibition as a retrospective law, so long as it leaves to the party practically a suitable remedy to enforce his rights before a tribunal properly constituted, with proper process to afford him *the redress to which he was entitled* before the change of the law. But if a law, though in form applying to the remedy alone, practically deprives either party of any vested right, either of action or defence, it

is unconstitutional and void. The judge who delivered the opinion in that case, in support of the only position there in question, that a statute of limitation, which in that instance allowed the creditor about eight years after its passage to bring his suit, was a statute affecting the remedy only, and did not affect the decision of the rights existing at its passage, cited many cases where it had been held that changes of remedy only did not affect the rights of parties, from decisions made in other States; and among those instances it is said, "New rules of evidence or practice may be established;" and some authorities elsewhere are cited in support of this position. The language then used is now cited in support of the position that an act making parties witnesses in their own cases is consistent with the constitution. It was there said, "New rules of evidence or practice may be established," &c., and of none of these things has a party any right to complain, so long as the laws leave to him a competent court, bound to administer justice *according to the rights the law gave him when his right of action or defence became vested*, with means and powers to accomplish its duties, and suitable process of which the party may avail himself. It clearly was not intended to lay down, even as matter of argument, the broad rule that new rules of evidence may be established, but to state that rule, subject to the qualification stated immediately *before* and *after*, that such change does not practically deprive either party of any vested right, either of action or defence.

The distinction relied on in *Willard* v. *Harvey* between a retrospective law affecting the remedy alone, and one which affects the decision of the cause, still appears to us to be sound; it is supported by the language of the constitution and by the numerous decisions referred to.

Many rules of evidence affect the remedy, or the mode of proceeding in the action, which may not and need not in any way affect the rights in dispute between the parties;

such, for instance, as the laws relating to the taking of depositions, prescribing when, in what cases, before what magistrates, upon what notice, they may be taken, the form of the caption, return, and the like. So the rule that signatures of contracts and conveyances, or the official signatures of magistrates, may be admitted without proof, unless formally and seasonably denied, and other cases of a like character.

But there are many other cases where the rules of evidence cannot be changed without affecting the rights of the parties, and entirely changing the grounds upon which those rights must be decided.

Some cases may be stated merely as examples, in illustration of this position, which must be assented to by every body.

One has a promissory note which is outlawed; that is, more than six years have elapsed since it was payable; but the holder has two reliable witnesses to prove that the signer within six years promised to pay it. He has to-day a perfect right of action on the note, and the evidence to sustain it. To-morrow the legislature pass an act that no evidence of a new promise shall take a case out of the statute of limitations, unless it is in writing and signed by the party. To-morrow, then, his right of action will be gone, because the legislature has deprived him of his proof to support his claim. And yet, in terms, the law affects the evidence merely.

A. has a deed, valid, when made, by the existing law, but attested by only one subscribing witness. A law is passed that no deed shall be admissible in evidence unless it is attested by two subscribing witnesses. Here his right to his farm is not attacked; nothing is affected, so far as the form is concerned, but the evidence of his title. And yet the owner must lose his farm by the change of the rule of evidence, if such a law is sustained.

An action is brought against B., founded on his parol

agreement to pay the debt of a third person. He has a perfect defence, because by the statute no action can be supported on such a contract. If the statute should be repealed, parol evidence, upon general principles, must be admitted, and his defence is gone if the act can be held consistent with the constitution.

Wills are now required to be attested by three witnesses. A statute requiring the testimony of four witnesses to establish a will would put it out of the power of devisees in most cases to prove their titles. A statute which should make written evidence indispensable to the proof of every contract, would defeat all parol agreements. An act which should make five years actual possession of real estate evidence of a conveyance of it from the owner, would at once change the ownership of a great amount of property, if it could be held to apply to cases where that term had already expired. Such a statute would not, in terms, affect any vested right, nor does it in form apply to any thing but the evidence.

Instances like these, showing that a change of the rules of evidence does not necessarily operate on the remedy alone, but may go much further, and may, and very often must, operate to give a right or defence which did not exist before, or to take away and destroy defences to which the party was clearly entitled under the previous law, might be multiplied indefinitely; but what the instances given would not suffice to prove, would not be proved by instances however numerous.

Assuming, then, that a change of the rules of evidence may change the rights of parties, the unavoidable inference from the case of *Willard* v. *Harvey*, and the authorities there cited, must be, that changes of the rules of evidence cannot, consistently with the constitution, be held to apply to any case founded on facts which had occurred before the act making such change, in any case where the effect of such change must be, or might be, to change the

rights of the parties or the grounds of the decision of their controversies.

The application of what is conceded to be the general rule, in the case of other statutes in terms affecting the remedy—that they can be sustained only so far as they affect the remedy alone, and are unconstitutional where they affect the decision upon the rights of the parties—is supported by the case of *Kendall* v. *Kingston*, 5 Mass. 524, where it is said by *Parsons*, C. J. : " Certainly the legislature may prescribe and frequently have prescribed rules of evidence, by which parties must support their acknowledged rights ; if at any time evidence was required by law which would defeat a constitutional right, the law would not be binding on the courts ;" and by the case of *Calder* v. *Bull*, 3 Dall. 386, which relates to that class of retrospective laws called *ex post facto* laws, and which must equally apply here to laws affecting the decision of civil cases. In that case *Chase*, J., says, that every law which makes an action done before the passing of the law and which was innocent when done, criminal, and punishes such criminal act, or which aggravates a crime, and makes it greater than it was when committed, or which changes the punishment and inflicts greater punishment than the law annexed to the crime when committed, *or which alters the legal rules of evidence, and receives less or different testimony* than the law required at the commission of the offence, in order to convict the offender, is an *ex post facto* law.

The question came before the Superior Court in the case of *Dunbarton* v. *Franklin*, 19 N. H. 257, where the controversy was as to the proof of a marriage. By the Revised Statutes, chap. 149, sec. 11, it was provided that any persons cohabiting and acknowledging each other as husband and wife, and generally reputed to be such for the period of three years, and until the decease of one of them, shall be deemed, after such decease, to have been

legally married. *Gilchrist*, C. J., says, "All the facts constituting the alleged marriage happened before the passage of the Revised Statutes. If section 11, of chapter 149, can enable acts, which happened before its passage, to constitute a valid marriage, it will give the effect of including all past as well as future cases. Evidence which did not prove a marriage before the passage of the act, and which was incompetent for that purpose, is made competent by the act—and facts, which, at the time they happened, did not constitute a marriage, would, if the act should be applied to them, have a validity they did not originally possess. Marriage is a civil contract, and if it be not valid at the time it is attempted to be entered into, it cannot be made so by any subsequent law. The application of the statute would make a new rule for the exposition of the contract, and would apply this rule to the construction of past contracts. This would be unequivocally retrospective, and would come within the prohibition of the 23d article of the Bill of Rights." "In many cases, long continued cohabitation is *primâ facie* evidence of marriage." "Evidence of cohabitation has a legal tendency to prove the existence of the marriage contract, but it is not conclusive evidence of it." "The instruction of the court was, in substance, that cohabitation and acknowledgment by the parties, that they were man and wife, constituted a marriage. This instruction was erroneous."

It is, we think, apparent that the real question involved in this case was, whether a statute, which in terms affected only the remedy—which had only the effect, apparently, of making proof of one fact conclusive evidence of another—was consistent with the constitution, where it operated upon facts long past at the time of its passage, and where its necessary consequence was to change the rights of the parties. It was rightly decided that it was in conflict with the constitution, and, so far as it applied to cases already past, inoperative and void.

Rich *v.* Flanders.

This decision seems to us directly in point upon the question before us.

It then becomes a question whether the statute, making parties witnesses in their own cases, will have, incidentally, the general effect to change the rights of the parties where the controversy relates to facts already past at the passage of the statute. As to this point, three cases may be supposed; first, the case where the party has no proof of his right of action; second, where he has some proof, but his own evidence is necessary to give it preponderance; and, third, the case where he has other and sufficient evidence, but his own is more easily reached.

In the first of these cases the effect of the change of the law is to change the legal rights of the parties. *De non apparentibus et de non existentibus eadem est ratio.* 5 Co. 5; Broom's Maxims, 121; 4 Co. 47. *Quod non apparet, non est.* The right which cannot be shown is, for all legal purposes, the same as if it did not exist. Though, in a moral point of view, it may be said that a man's right is none the less perfect when it cannot be proved, yet in law it is otherwise, and the right is not deemed legally to exist if it cannot be proved. In such a case the statute which confers on a man the means of proving a claim of which he was before destitute, at the same time in a legal sense bestows on him the right which the proof sustains. If it gives a remedy it gives a right. *Ubi nullum remedium ibi nullum jus.* It is a vain thing to imagine a right without a remedy, for want of remedy and want of right are reciprocal. *Ashby* v. *White,* 2 Ld. Raym. 953; *Winsmore* v. *Greensbank,* Willes 577. To allow the legislature to make laws which in their consequences take the rights of one to bestow them upon another, could not have been intended by the framers of the constitution. So far as such laws affect the remedy alone, they are not open to objection, but they are forbidden, when they affect the decision of a civil cause.

The second case supposed must obviously fall within the same reason as the first. Insufficient evidence, in its legal effect, is as no evidence, and the rule which forbids the law to create new evidence where there was none before, must equally apply where there is some evidence, but not enough.

The third case it is needless to discuss, because no question of the admissibility of evidence is likely to arise in a case where other and sufficient evidence is offered. If such evidence is not produced, no court could presume it to exist.

It is not necessary that the court should see that the admission of evidence, before inadmissible, would operate to divest the right of one man and to vest it in another. It is quite enough that the court see that the evidence may have that effect, to justify and to require them to decide that the statute cannot apply to such cases.

The question of the admissibility of the evidence of a party in a case founded upon transactions entirely past at the time of the enactment of the law, has arisen in many cases, and I refer to the case of *Little* v. *Balch*, decided at this term, as presenting the point as free from extraneous circumstances as any that can be expected to occur. Independently of the testimony of the complainants themselves, it is understood that the whole evidence tends to establish the fact that the suit there in question was commenced by a duly qualified attorney of the court, by the direction and authority of the complainants. And upon this point the whole case depended. The evidence was all one way, and uncontradicted. A jury, if the case were before them, would be bound to render their verdict in the defendant's favor, upon all the legal evidence capable of being presented in court, at the time when the right of parties became fixed, before the statute of 1857. The complainants were then, by the law of the land, incompetent to testify as to any of the facts in controversy in the

Rich *v.* Flanders.

case, and the other evidence being unchanged, they had no right to recover. The case then being perfectly hopeless, the legislature pass this act making parties witnesses, and thus enable the plaintiffs to support their case by their own testimony. Under this act they can prove their case. As the law previously was, they could make no step towards doing so. The question then is, what is the effect and operation of this statute upon the case. It changes the remedy by changing the rules of evidence. If it does nothing more, it is not in conflict with the principles of sound legislation, nor with the provision of the constitution. If it does that, and more ; if it " prescribes new rules for the decision of an existing cause, so as to change the ground of action or the nature of the defence"— *Woart* v. *Winnick* ; if it takes away, or impairs vested rights acquired under existing laws—*Dow* v. *Norris* ; if the law, though in form applying to the remedy only, practically deprives either party of any vested right, either of action or defence, it is unconstitutional and void. *Willard* v. *Harvey.* The defendant has a right to complain of it as a violation of the constitution, if, under this new law, the court is no longer " bound to administer justice to him, according to the rights the law gave him when his right of action or defence became vested."

" If the laws had done nothing more than change the remedy," says *Taney*, C. J., in *Bronson* v. *McKenzie,* 1 How. 311, " they would be liable to no constitutional objection. Whatever belongs to the remedy merely, may be altered according to the will of the State, provided the alteration does not impair the obligation of the contract." (That is, in this State, any vested right of the parties.) " But if that effect is produced, it is immaterial whether it is done by acting on the remedy, or directly on the contract" (vested rights) " itself." *James* v. *Stull,* 9 Barb. 482 ; *Morse* v. *Gould,* 1 Kernan 287.

In the case referred it is too plain for argument that the

rights of the parties are essentially changed by the change of the remedy.

In the case of *Falls* v. *Wadsworth,* 10 Shepl. 553, it was held that a statute, making protests evidence, applied as well to those made before as after its passage; and *Whitman,* C. J., is reported to have said : " The Legislature may prescribe the number of witnesses which shall be necessary to establish a fact in court, and may, again, at pleasure modify or repeal such law ; and so they may prescribe what shall and what shall not be evidence of a fact; whether it be written or oral ; and it makes no difference whether it be in reference to contracts existing at the time or prospectively." This decision fully sustains the constitutionality of our law here in question, if it is entitled to be regarded as of any weight or authority here, but it is not. The decision is revolting to us, even under the limited restriction of the constitution of Maine, which contains no provision even impliedly prohibiting retrospective legislation. And the case is regarded as being in direct conflict with the whole body of decisions at common law, which hold that a statute shall never be construed to have a retrospective operation, unless its language will admit of no other construction. Other cases in Maine are subject to a like remark, and they are wholly inconsistent with the decisions here. The same is true of the case of *Pratt* v. *Jones,* 25 Vt. 303.

As I regard the statute in question—so far as it applies to causes of action existing at its passage—as retrospective, and as affecting not merely the remedy but the vested rights of the parties, I feel compelled to dissent from the decision of the majority of the court.

Rich *v.* Flanders.

FOWLER, J.* By the act of June 27, 1857, pending suits were expressly excepted from the operation of its provisions making parties to actions competent witnesses on the trial thereof, in certain cases. By the act of June 25, 1858, after full discussion and debate in both years on the question of the constitutional power of the legislature to enact a law making parties to pending suits competent witnesses, this exception was repealed, and thereby, as we cannot but understand the force and effect of the act, the provisions of the former law were clearly extended and made applicable, and designed to be extended and made applicable to pending suits. Regarding this change of the law of 1857 as indicating the construction deliberately and understandingly given by the legislature to the twenty-third article of the Bill of Rights of our State constitution, that construction ought to have great weight, and not to be overruled, unless manifestly erroneous. For, although the legislature, in consequence of their construction of the constitution, cannot make laws repugnant to it, yet every department of government, invested with certain constitutional powers, must, in the first instance, though not conclusively, be the judge of its own powers, or it could never act.

Construing, then, the law of June 25, 1858, as only in our judgment it can reasonably be construed, as making parties to pending suits, except in certain specified cases, competent witnesses on the trial thereof, is that law unconstitutional and void, as being in violation of the twenty-third article of the Bill of Rights?

The language of that article is as follows:

" Retrospective laws are highly injurious, oppressive and unjust. No such laws, therefore, should be made,

* This opinion is but an extract from a more extended one, prepared upon the same question, in *Little* v. *Gibson*, *post*, the greater portion of which was anticipated and superseded by the full and elaborate discussion of Mr. Justice SARGENT, in this case.

either for the decision of civil causes, or the punishment of offences."

Is a law making the parties to pending suits competent witnesses on the trial thereof, retrospective, within the clear intent and unequivocal meaning of this article? Is it, in the first place, highly injurious, oppressive and un-just; and, in the second place, does it establish a new rule for the decision of civil causes? We are unable to perceive how either of these questions can be answered in the affirmative, taking the words of the article in the sense in which they must have been understood and employed by the framers of the constitution, and as they have been interpreted by the judicial tribunals of our own and other States and countries.

Originally, and until grounds of public policy induced courts of law to establish a different rule, there could have been no reason why the parties to a suit, who, from the nature of things, must ordinarily possess greater, more correct and more definite knowledge in relation to its subject matter than any other persons, should not have been permitted to communicate that knowledge to the tribunal which was to determine the merits of the controversy. In some tribunals, in certain classes of cases in the common law courts, and in certain contingencies in others, parties have always been permitted to testify. They have only been excluded generally, because it was supposed by the courts to be impolitic, unsafe and unwise to subject their integrity and truthfulness to the temptation which their interest in the result of the cause was regarded as presenting, to induce them to testify falsely, and not because truth from their lips would be less important or valuable than from the mouth of strangers.

Now a law which abrogates an artificial and arbitrary rule of evidence, established by the courts solely as a matter of public policy and expediency, does not seem to us capable of being properly characterized as " highly inju-

rious, oppressive and unjust," within the meaning of the
Bill of Rights. At most, it can only be regarded as highly
injudicious, impolitic and inexpedient, as the reverse of
the supposed judicious, politic and expedient rule super-
seded by it, but not as naturally and inherently injurious,
oppressive and unjust. Nor do we believe it could have
been the design of those who established our State gov-
ernment to prohibit the legislature from changing, at
pleasure, any rules of the common law which rested upon
public policy alone, and under which no rights had become
vested. They must have intended to forbid only such
laws as would, according to the established principles of
jurisprudence to which they were accustomed and attach-
ed, be regarded as positively, radically and inherently in-
jurious, oppressive and unjust, to the rights of the citizen
vested under existing laws.

It was a principle of the English common law—the
body of which was in force here at the period of the
Revolution, and is expressly recognized in our constitu-
tion—as ancient as the common law itself, and resting on
the recognized doctrines of the civil code, that a statute,
even of the omnipotent parliament of England, was not
to have a retrospective effect, so as to take away or im-
pair vested rights, or rights complete in themselves and
clearly entitled by existing laws to be enforced. *Nova
constitutio futuris formam debet imponere, non præteritis.* Brac-
ton, Lib. 4, Fol. 228 ; 2 Inst. 292. This was the doctrine
laid down by Bracton and Coke, and in *Gilmore* v. *Shuter*,
2 Shower 17, 2 Mod. 310, 2 Lev. 227, 2 Jones 108, 1
Freeman 466, 1 Ventris 330, decided in the 29th year
of the reign of Charles II., it received a solemn recogni-
tion in the court of King's Bench. In that case a suit
was brought after the 24th of June, 1677, upon a parol
promise made before that date, but to be performed after-
wards ; and the question was whether it was void, or the
action founded upon it could be defeated by the statute

Rich *v.* Flanders.

of frauds and perjuries, which enacted that "from and after the 24th of June, 1677, no action should be brought to charge any person upon any agreement made in consideration of marriage, &c., unless such agreement were in writing," &c. It was admitted that the promise declared on was of the same kind with those mentioned in the statute, and the suit had been commenced after the date specified in the statute; but the court agreed unanimously that the statute was to be read by transposition of the words, for that it was not to be presumed that the act had a retrospect to take away an action to which the plaintiff was then entitled, and that the other construction would make the act repugnant to common justice. So, again, in the comparatively modern case of *Couch* v. *Jeffries*, 4 Burr. 2460, decided on the 24th of June, 1769, which was a *qui tam* suit for a penalty, the question was whether a statute, passed after the commencement of the action, allowing delinquents by a certain day to pay a stamp duty, and thereby rid themselves of the penalty, should affect the result of a suit already commenced; and the court of King's Bench unanimously determined that it could not. "It can never be the true construction of this act," said Lord *Mansfield*, "to take away this vested right, and punish the innocent pursuer of it with costs." This subject is very fully discussed, with great ability and learning, by Chief Justice *Kent*, in *Dash* v. *Vanleek*, 7 Johns. 477, where it was holden that an act of the legislature authorizing the sheriff, in an action for an escape, to show the return of the prisoner into custody, could not be applied to an action commenced before its passage, so as to take away the vested right of the plaintiff to recover the full amount of his debt; it being a principle of universal jurisprudence that laws, civil and criminal, must have a prospective and not a retrospective effect, so far as they create or establish new rules for the decision of civil causes, or the punishment of offences.

Rich *v.* Flanders.

It was this long established and universally recognized principle of the common law, constituting one of the fundamental principles of the British constitution, and this only, which the framers of our constitution intended to declare and enforce in the twenty-third article of the Bill of Rights. They designed to make axiomatic and unquestionable the prohibition of any attempt by the legislature to change the established rules of law for the decision of either civil or criminal causes, whenever and wherever the rights of the parties thereto were perfect and complete under existing laws, well known and clearly established. They designed to prohibit and render impossible any interference by the legislature to prevent the due and regular administration of right and justice by the established judicial tribunals, according to the course of the common law, as it had been long practiced in the mother country and in this colony. They undoubtedly intended to prevent the recurrence of the practice, which had been somewhat frequent under the colonial administration, as well as in the period intervening between the breaking out of the Revolution and the adoption of this constitution, that when parties had exhausted the powers of the courts, they would apply to the legislature and procure the passage of an act restoring them to law, thereby rendering comparatively uncertain and valueless the results of all judicial proceedings. The leading minds in the convention which framed our constitution were learned and able lawyers, thoroughly versed in the doctrines of Bracton and Coke, and they wished to enunciate in the Bill of Rights prefixed to the instrument establishing a permanent form of State government, the great and well established doctrines of English liberty, the maintenance of which a long series of protracted contests between arbitrary power and popular rights had demonstrated to be essential to the security of the people of a free commonwealth. How wisely they judged, and how success-

fully they executed their purpose, the continued existence of their work, unchanged, save in a single particular, after the lapse of nearly three quarters of a century, abounding in changes every where else throughout the civilized world, and especially in our own country, furnishes most incontrovertible evidence.

But they never intended or could have designed to prevent or prohibit the legislature from regulating and improving the proceedings and increasing the facilities for enforcing existing rights, whether in suit or not, according to the established rules of decision; they could never have designed to prevent or prohibit the legislature from regulating or changing the remedies of parties, or removing the disqualifications of the witnesses necessary to establish facts, thereby diminishing the length and expenses of litigation by opening new sources of evidence and shortening the period necessary to elicit the truth of a matter in controversy; because there is nothing to be found in the history of the contests between legislative power and popular rights, in England or elsewhere, tending to show that any question had ever been raised against the power of the government in these respects. It was always considered the undoubted prerogative of the British parliament to enact general laws, establishing and changing the tribunals in which rights were to be established or maintained, and wrongs redressed, and to regulate the course and method of procedure, and to modify and change the rules of evidence therein; and no instance can be found, so far as our examination has extended, in which the power of parliament to designate the kind and character of evidence to be received, to determine what should or should not constitute a disqualification of witnesses, or render them competent or incompetent to testify in courts of law, was ever questioned. Changes have been constantly occurring, both in England and in this country, in relation to all these subjects; as, for example, in this State,

the laws authorizing courts to appoint auditors and commissioners, and making their reports competent evidence on the trial before the jury; the law making protests of bills of exchange, notes or orders, competent evidence of the facts stated therein and of the notice given to the drawers or indorsers; and that authorizing the taking of depositions to be used for a great variety of causes unknown before; but we have sought in vain for any case wherein the question of the constitutionality or validity of any such statute, in its operation upon existing suits or causes of action, has ever been raised and decided against the statute. On the contrary, all the decisions we have been able to examine on that subject, distinctly recognize the full power and authority of the legislature to regulate, control and modify every thing in relation to remedies and the proceedings therein, including the evidence to be received on trial. It is only when the legislative power has undertaken to introduce, by force of a statute, a new rule for the decision of civil causes, to impair the obligation of contracts, or to prescribe a different and more severe mode of punishment for past offences, that its acts have been pronounced invalid and unauthorized, as in violation of the constitution or the recognized principles of universal jurisprudence.

Two species of retrospective laws are prohibited by our Bill of Rights, namely, those for the punishment of offences, and those for the decision of civil causes; and as long ago as September, 1825, in the case of *Woart* v. *Winnick*, 3 N. H. 473, the Superior Court gave an authoritative exposition of the nature and characteristics of the two classes of laws whose enactment is thus forbidden. In the terse and forcible language of Chief Justice *Richardson*, in delivering the opinion of the court, "A retrospective law for the punishment of an offence, within the meaning of our Bill of Rights, must be a law made to punish an act previously done, or to increase the punish-

ment of such an act, or in some way to change the rules of law in relation to its punishment, to the prejudice of him who committed it. In other words, it must be a law establishing a new rule for the punishment of an act already done."

"A law for the decision of a cause," proceeds the learned chief justice, "is a law prescribing the rules by which it is to be decided; a law enacting the general principles by which the decision is to be governed. And a retrospective law for the decision of civil causes is a law prescribing the rules by which existing causes are to be decided, upon facts existing previous to the making of the law. Indeed, instead of being rules for the decision of future causes, as all laws are in their very essence, retrospective laws for the decision of civil causes are, in their nature, judicial determinations of the rules by which existing causes shall be settled upon existing facts. They may relate to the grounds of the action or the grounds of the defence, both of which seem to be equally protected by the constitution. And as, on the one hand, it is not within the constitutional competency of the legislature to amend by statute any legal ground on which a pending action is founded, or to create any new bar by which such action may be defeated; so, on the other hand, it is believed that no new ground for the support of an existing action can be created by statute, nor any legal bar to such an action be thus taken away. A statute attempting any of these things seems to us to be a retrospective law for the decision of civil causes, within the prohibition of this article of the Bill of Rights. It is the province of the legislature to provide rules for the decision of future causes; of courts to determine by what rules existing causes are to be decided."

To substantially the same effect is the decision of Mr. Justice *Story*, in *The Society for the Propagation of the Gospel* v. *Wheeler*, 2 Gallison 139. "Every statute which takes away or impairs vested rights, acquired under existing

Rich *v.* Flanders.

laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions already past, must be deemed a retrospective law, within the intent and meaning of this article of the Bill of Rights of the constitution of New-Hampshire."

Does the statute making the parties to a pending suit competent witnesses on the trial thereof, come within the prohibition of the Bill of Rights, as thus expounded by those eminent jurists? Does such a statute, in the words of Chief Justice *Richardson*, prescribe the rule by which the cause is to be decided, annul any legal ground on which the action is founded, or create any new bar by which it may be defeated? Does it create any new ground for its support, or remove any legal bar to its maintenance? Does it, in the language of Judge *Story*, take away or impair any vested right acquired under existing laws, create any new obligation, impose any new duty, or attach any new disability in respect to transactions already past? It seems to us clearly not; it creates nothing, but only opens an important avenue to truth before closed. It is a mere regulation of the proceeding for enforcing a remedy by prescribing a rule, not for the decision of the cause in any respect, but only for the admission of evidence already existing, but excluded from examination by an arbitrary rule in that proceeding—an exercise of the universally acknowledged powers of every sovereignty.

It seems to us quite in vain to say, that under the operation of this statute a plaintiff may sometimes be able to maintain an action, or a defendant to establish a defence, which he could not have done without it. To our mind this by no means makes the law unconstitutional, but is one of its chief excellencies rather. The right, in the one case or in the other, existed as truly and as justly before the enactment of the law as afterwards, and the rules by which it was to be determined, the standard of right and wrong between party and party, were not changed. The

only effect of the law in such a case, then, would be to secure the triumph of right and justice, where before, in consequence of the imperfection of the remedy given by the laws, wrong and injustice must have prevailed. So far from a law which thus operates being "highly injurious, oppressive and unjust," it is directly the opposite, and, therefore, in no proper sense within the inhibition of the Bill of Rights.

Besides, no man can have a vested right in a mere mode of enforcing his contracts, or of obtaining redress for his real or imaginary wrongs. The legislature may always alter the form and mode of administering right and justice, and may transfer jurisdiction of existing rights or wrongs from one tribunal to another, having entirely different rules of evidence. So far as relates to laws prescribing whether the parties themselves shall or shall not be competent witnesses, whether a party shall proceed for redress in one tribunal or another, by one form of action or another, under one rule of evidence or pleading or another; indeed, so far as concerns the evidence or remedy competent or necessary to be employed in enforcing contracts or obtaining satisfaction for wrongs, laws which operate retrospectively upon existing contracts or rights of action, whether in suit or not, do not generally come within the constitutional inhibition. When statutes modify the rules of evidence by rendering witnesses competent who were incompetent before, or the reverse, this is generally a mere regulation of the proceeding for enforcing a remedy, and so not liable to the constitutional objection; although, by thus changing the mode of proof by changing the rules of evidence, the plaintiff may sometimes fail of proving his case, or the defendant be unable to establish the grounds of his defence. *Kendall* v. *Kingston*, 5 Mass. 524; *Wright* v. *Oakley*, 5 Met. 408; *Fales* v. *Wadsworth*, 23 Me. 555; *Springfield* v. *Comrs.*, 6 Pick. 501; *Willard* v. *Harvey*, 24 N. H. 344.

Laws which affect the remedy only are not within the scope of retrospective laws, or of laws impairing the obligation of contracts, unless they impair or destroy a vested right. If they only take away part of a remedy, or modify it in any way, they are valid, although retrospective. *Donelly* v. *Corbett*, 3 Selden 500; *Paschal* v. *Perez*, 7 Texas 348; *Adams* v. *Hackett*, 27 N. H. 289; *Gilman* v. *Cutts*, 23 N. H. 382.

A statute is not objectionable as retrospective because it purports to operate on prior contingent or qualified rights, but only when it operates to divest vested rights. It is not enough, to make a law unconstitutional, that the remedy is changed or modified, and rendered less speedy and convenient, or less effectual; if there is still a substantial remedy left to enable the party to maintain his rights, that is sufficient. *James* v. *Steele*, 9 Barb. 482; *Clarke* v. *McCreary*, 12 S. & M. 347; *Clark* v. *Clark*, 10 N. H. 386; *Alexander* v. *Follet*, 5 N. H. 494.

It is not unconstitutional to provide a new or additional remedy, or for the introduction of new and additional evidence to establish a just right already in being, but which would be lost and destroyed if no such remedy were provided, or if such new and additional evidence were not introduced. *Paschall* v. *Whitsett*, 11 Alabama 472; *Hope* v. *Johnson*, 2 Yerg. 125; *Anon.*, 2 Stewart (Ala.) 228; *U. S.* v. *Samperyac*, 1 Hemp. (U. S.) 118.

With these views we fully concur, with the majority of the court, in the result at which Judge *Sargent* has arrived: that the law of June 25, 1858, making parties to pending suits competent witnesses on the trial thereof, in certain cases, is constitutional and valid.

BELLOWS, J. After a careful examination of the general question considered in this case, I am compelled reluctantly to differ with a majority of my brethren; and as I deem the conclusions which they have reached to be

a departure from the settled course of judicial decisions in this State, and inconsistent with our fundamental law, I feel it to be a duty to state the reasons for my opinion.

In what I have to say I shall confine myself to two general questions, without reference to the precise points raised by the case in which the opinion is delivered, it having been prepared for another case. Those questions are: First, what is the true interpretation of the law of June 25, 1858, in respect to actions then pending? Second, had the legislature power to change the rules of evidence to affect a pending suit?

First, as to the interpretation. In the construction of statutes there is no rule more universally recognized or better understood than this, that no law shall be interpreted so as to have a retrospective effect, unless the intention of the law-makers to give it such effect be plainly and unequivocally expressed. The terms in which the rule has been judicially announced are various, but all recognize, in strong and energetic language, the unjust and oppressive nature of such laws; and such expression has been common, both in England and in this country, and as well where the legislatures have the power to make retrospective laws, as where they have not. Nor is the rule confined to laws which are supposed to have a retrospective effect upon rights, in contradistinction to remedies, but extends in its full force to laws which bear merely upon the latter. In this State the course of judicial decisions, so far as reported, has been uniform, and the rule here has been applied to laws affecting the right to a new trial, the statute of limitations, the rules of pleading, proof of marriage, the assent of a majority or all the road commissioners to a report, and the right of review. In all these cases the laws bore only upon *remedies*, and the opinions were given by judges who were among the most eminent in this or any other State.

In *Woart* v. *Winnick*, 3 N. H. 482, where the law in ques-

tion repealed the statute of limitations, *Richardson*, C. J., says of the construction he gives to the repealing clause, excluding its application to pending suits, that it is " contrary to the letter, but is required by the constitution." So in *Kennett's Petition*, 24 N. H. 139, *Bell*, J., holds that though the statute is broad enough in its terms, it did not apply to a pending suit, and says that, whatever may be the language of the legislature, we are bound to presume that they intended to keep within the limits of the constitution. In *Colony* v. *Dublin*, 32 N. H. 434, and *Dickinson* v. *Lovell*, 36 N. H. 364, the same doctrine is held by *Perley*, C. J., and in the latter he says " that it is an established maxim in the construction of statutes that the lawgiver will not be presumed to intend that a law should in any way affect a remedy in a pending suit, unless the intention be very clearly expressed." In England the same rule of construction exists, although the parliament is held to be omnipotent. 2 Inst. 292 ; Bac. Abr., Statutes, C. ; Bracton, Lib. 4, Fol. 288. In Broom's Legal Maxims 69, it is said that it is in general true that a statute shall not be so construed as to operate retrospectively, or to take away a vested right, unless it contain an enumeration of the cases in which it is to have such an operation, or words which can have no meaning unless such a construction be adopted. And so it is in the United States Courts. In *United States* v. *Schooner Peggy*, 1 Cranch 103, *Marshall*, C. J., says courts will struggle hard against a construction of a law that by a retrospective operation will affect the rights of parties. In *Prince* v. *United States*, 2 Gallison 204, it is held that the *retrospective effect must be clearly intended*, to justify such a construction. So in *United States* v. *Heth*, 3 Cranch 399, it is held, by *Patterson*, J., that words must be clear, strong and imperative, so that no other meaning can be annexed to them, or the intention of the legislature cannot be otherwise satisfied—to justify such construction. In *Watkins* v.

*Haight*, 18 Johns. 139, it was held that a law limiting writs of error did not apply to judgments rendered before the act. So in *Somerset* v. *Dighton*, 12 Mass. 381, the court held that a retrospective operation will not be given to a statute, unless that intention has been manifested by the *most clear and unequivocal. expressions.* So in *Whitman* v. *Hapgood*, 10 Mass., 439. In *Hastings* v. *Lane*, 15 Maine 134, it is held by *Shepley*, J., that a statute is not to have a retrospective effect unless the intention be *clearly expressed;* and so in *Tenny* v. *Corliss*, 33 Maine 333. In *Briggs* v. *Hubbard*, 19 Vt., it was held that a statute should not have a retrospective effect unless the language is too *explicit to admit of any other construction.* *Plumb* v. *Savage*, 21 Conn. 317, decides that a statute is not to have a retrospective effect unless it be required *in the most explicit terms.* So a retrospective construction cannot be justified by any thing "short of the most indubitable phraseology;" *Dewart* v. *Pardy*, 29 Penn. 113; nor without "express terms;" *Saunders* v. *Carroll*, 12 Louis. Ann. 793; or "expressly declaring the intention;" 5 Duer 183; nor "unless it can have no other meaning;" *Garrett* v. *Beaumont*, 24 Miss. 377.

Upon these principles it is very clear that the law of June 25, 1858, standing alone, could not be construed to apply to pending suits; and it is equally clear that the law of June, 1857, does not apply, it being expressly provided that it shall not. The only ground upon which it is claimed that under the law of 1858 parties may testify in suits pending at its passage, is, that by this law the exception in the law of 1857 was repealed; but I think this argument loses most if not all its weight, when we consider that by the clearest and best established rules of construction the proviso was wholly unnecessary, and without it the law could not have affected pending suits. The argument, then, assumes this simple form, that the mere repeal of the proviso—the omission of which in the origi-

nal law would have had no effect whatever—is a clear and unequivocal expression of the legislative will that the law should apply to pending suits. This proviso is contained in the third section, which also provides that the law shall not apply to the attestation of wills and other instruments requiring attestation, or to cases where one party is an executor or administrator. The law of 1858 modifies the law of 1857 in several respects, and among others by providing in the first section for the taking and use of the depositions of parties. This section is a long one and carefully guarded, and is apparently the main purpose of the act. Section 2 is a revision of the third section in the law of 1857, which contains the proviso, and modifies the law in several particulars. By the original act parties were made competent witnesses in " any civil suit or proceeding in law or in equity." Section 2 of the new law applies the provisions of the former law to " all actions, suits and proceedings, at law or in equity ;" leaving it open to the question whether criminal proceedings were not included. And it may be observed that although the language is broad enough to embrace criminal causes, and although the express limitation to civil suits and proceedings in the old law is stricken out in the new, yet the court have held that criminal causes were not included; and this furnishes a marked example of the fallacy of the argument which claims so much from the striking out of the proviso. Section 2 of the new law also adapts the exception to the new provisions in respect to depositions, and instead of providing that when one party is an executor or administrator the opposite party shall not testify without the consent of his adversary, it provides that he shall not testify unless his adversary himself elect to testify ; and it also omits altogether the proviso in question.

Looking, then, at all the provisions of the new law, I hold it to be impossible to say that the intention to extend it to impending suits is clearly and unequivocally

expressed. If such was the purpose of the framer, the question at once arises, why was not that purpose distinctly expressed, as required by the settled maxims of construction? If the expression be ambiguous, it is clear that the law cannot have a retrospective effect. And the remarks of *Bell*, J., in *Kennett's Petition*, before cited, may well apply, that the "omission of a proviso restricting the application to future cases may well be attributed to the settled and well known construction given by the courts, which confines the operation of new statutes in such cases to new causes of action." The omission, then, thus to apply the law in *distinct terms* to pending suits, is a strong argument against such application.

The proof of the legislative intention is not to be sought for in the purpose of the one who framed the bill, but in the language of the act, viewed in the light of those fundamental principles that have been generally recognized, and of the former legislation upon the same subject. *In re Thomas Murphy*, 3 Zab. 180. In *United States* v. *Fisher*, 2 Cranch 390, *Marshall*, C. J., says that "when fundamental principles are overthrown by a law, when the general system of the laws is departed from, the legislative intention must be expressed with unmistakable clearness, to induce a court of justice to suppose a design to effect such objects;" and this, I think, applies in its full force to the law before us.

It is true that changes have been made in the tribunal which is to *administer* the law, and which have incidentally affected the forms and modes of proceeding; and, from necessity, these changes have been applied to pending suits; but since the case of *Merrill* v. *Sherburne*, 1 N. H. 199, decided in 1818, there has been no legislation sustained by the courts that has undertaken to effect pending suits otherwise than incidentally, through changes in the tribunal. The decisions already referred to are conclusive on this point, and they embrace numerous cases where the

questions raised affected merely the remedy, as in *Woart* v. *Winnick* and *Kennett's Petition*, before cited. In *Colony* v. *Dublin*, 32 N. H. 432, decided in 1855, the law under consideration provided that " no highway shall *hereafter* be laid out upon the report of the commissioners, unless the report shall be concurred in, and signed by all the commissioners." In this case the petition was pending at the passage of the law, and the highway laid out afterwards, and the report signed by two only of the three commissioners, and it was held that the law did not apply. In *Dickinson* v. *Lovell*, before cited, a law broad enough in its terms to take away the right of review in all cases, was held not to apply to pending suits. In this case *Perley*, C. J., holds that, " when the legislature has power to take away or substantially modify the remedy in a pending suit, it is generally impolitic and unjust to exercise it, the plaintiff having reason to rely on the remedy which the existing law gives him in the form of action he has chosen."

The leading case of *Dash* v. *Vanleek*, 7 Johns. 477, often approved by our courts, was debt for an escape. It appeared that by the statute existing at the time, and as judicially construed by the court, a recapture or return would not exonerate the sheriff, as at common law. But after such escape and pending this suit, another statute was passed, providing that nothing contained in the former statute should be so construed as to prevent a sheriff from availing himself, as at common law, of a defence arising from a recapture or return of the prisoner. It was held, however, after great consideration, that this declaratory law could not retrospect and affect the pending suit. And *Thompson*, J., says that " nothing but the most direct and unequivocal expressions would justify such a conclusion." Chancellor *Kent* says : " I should be unwilling to consider any act so intended unless that intention was made manifest by express words, because it would be a violation of

fundamental principles, which is never to be presumed."
Again he says, "that the very essence of a new law is a
rule for future cases," and that "a statute ought never to
receive such a construction if it be susceptible of any
other." And again, that "we are to presume, out of re-
spect to the law-giver, that the statute was not meant to
operate retrospectively," and that "if we call to our atten-
tion the general sense of mankind on the subject of retro-
spective laws, it will afford the best reason to conclude
that the legislature did not intend in this case to set so
pernicious a precedent." In that case the purpose to
apply the law to existing causes was, I think, more strongly
manifested than in the case before us, as the attempt was
to declare the meaning of the *old* law and not to make a
new one, and it strongly sustains the interpretation I con-
tend for. If it be said that the law in *Dash* v. *Vanleek*
bore upon *rights* rather than remedies, I answer that no
distinction is made in New-Hampshire, and that in the
cases I have cited, which apply to remedies, the precise
doctrines of *Dash* v. *Vanleek* are fully recognized and
adopted. This maxim of construction is expressly adopted
and applied to cases of repeal, by the Revised Statutes,
(chap. 1, sec. 26,) providing that a repeal shall in no case
affect any act done, or suit or proceeding commenced
before the repeal; and it clearly makes no distinction
between rights and remedies. Upon these grounds I hold
that the law under consideration does not apply to pend-
ing suits.

The remaining question is, has the Legislature the power
by such a law to affect pending suits. And I hold that
it has no such power; that it is restrained by the 23d ar-
ticle of the Bill of Rights, which declares that "retrospec-
tive laws are highly injurious, oppressive and unjust; no
such laws, therefore, should be made, either for the decis-
ion of civil causes or the punishment of offences." And
the question is, in what sense are we to understand the

Rich *v.* Flanders.

terms "retrospective laws for the decision of civil causes." To determine this question, we are to consider the general nature and import of the provision, aided by judicial interpretation, as applied both to civil and criminal causes, and especially the construction given to the article by our own courts. As to the nature and import of the provision, it is contended that the prohibition is confined to laws which impair the obligation of contracts, and affect vested rights, but does not extend to laws which affect merely the remedy, whether a suit be pending or not. And this I propose now to consider, and I shall show, as I think, that there is no solid ground for such a distinction, and that none in fact exists.

In arriving at the final judgment in a cause, facts are to be ascertained, and to them the law is to be applied. In ascertaining these facts the tribunal is guided by a vast body of rules, established by the wisdom of ages, and known as the law of evidence. By these rules is determined the admissibility of evidence—whether it shall be written or oral—the competency of witnesses—what shall be *prima facie* proof—the nature and office of presumptions both of law and fact, embracing a vast body of rules, upon the stability of which depend numerous titles to real property and other civil rights, such presumptions having often a most important bearing upon the proof of marriage, legitimacy, sanity, death, adverse occupation, notice, statute of limitations, correctness of previous proceedings, new promises, payment, malice, damages, and the like. So the rules of pleading, deciding what shall be regarded as admitted in pleading or by answers in chancery, what questions are raised and what matters admitted by the general issue and other pleas in the different forms of action, the effect of a brief statement, the questions raised by demurrer to a replication, the rule of damages in different forms of action, as in debt or case for an escape, and the effect of the death or marriage of

one of several plaintiffs or defendants, and also laws which give the right of appeal and of review, petitions for new trials, and writs of error, with their limitations, are often vital, though pertaining only to the remedy. The same may be said of laws which take away existing forms of remedy; as, for example, writs of right, with their peculiar features, actions of trespass, with the right to exemplary damages, and debt for an escape, with the right to the whole debt instead of nominal damages. For instance, take a law that no action of debt for an escape shall hereafter be maintained, but an action on the case only, and apply it to a pending action of debt, by which the plaintiff is defeated, and obliged to pay costs, instead of recovering his whole debt, as otherwise he might. Precisely this has been done in the State of Maine, where no constitutional restriction existed, as appears in *Thayer* v. *Seavey*, 2 Fairfield 285 ; and the effect is none the less unjust, because it is an incident of the change of the form of action, instead of a direct and frank provision that in such action of debt actual damages only should be recovered. The case is justly exposed to the severe animadversions of Chancellor *Kent*, in the celebrated case of *Dash* v. *Vanleek*, which involved a similar question. Take, also, the case of a law which will allow no action to be maintained for breach of certain promises, unless such promises are in writing, and apply it to a suit pending at its passage, as has been repeatedly done of late in England; and yet this is but matter of evidence, not undertaking *directly* to avoid the contract, but doing it *indirectly*, by withholding the remedy. If it be said that this cannot be done, because it takes away *all* remedy, the question at once arises, whether there is any difference in principle between withholding all remedy, and diminishing substantially the efficiency of that which exists, as by compelling a resort to case instead of debt for an escape. Suppose, again, that a suit be brought upon the faith of the present witness law,

giving the plaintiff a right to testify: would not a law depriving him of this right be as objectionable in principle as if he were required to prove his contract by writing, as under the statute of frauds.   Suppose, again, that the statute of frauds be repealed, and the repeal made constitutionally applicable to an existing cause, would not the party recover on a parol promise, where, before the repeal, the remedy was withheld?  Such is, I think, the principle adopted in Massachusetts, where no prohibition exists but the one against impairing the obligation of contracts, as in *Hewitt* v. *Wilcox*, 1 Met. 154, where, on the repeal of a statute withholding the remedy to an unlicensed physician, he was allowed to recover for services before the repeal.   Indeed, laws which require a contract to be proved by a writing or by oral testimony coming from a source other than the parties, or repeal both restrictions, make the record of a deéd notice or repeal such provision, stand upon the same footing, and no solid distinction between them, in *principle*, can be shown.   If it be urged, in respect of the statute of frauds, that it goes further than to affect the remedy, it should be borne in mind that this statute does not make void a parol promise, but merely withholds the remedy, leaving such promise a good consideration for another.   If it be said of some of the cases suggested, that, though matters of remedy, they substantially affect the right, I answer, that such is the effect of a large proportion of the laws which regulate the remedy.   Indeed, as to actions pending, it would seldom be otherwise, and especially is it so in respect to a law which gives or deprives a party of the right to testify in his own cause, including the right to call his adversary.

Let us next inquire what has been the judicial interpretation of the term retrospective laws, as applied to both civil and criminal causes; and in doing so it will be well to bear in mind the time of the adoption of the provision, which in the present constitution was in 1792; though in

the previous constitution, framed in 1783, and adopted in
1784, the same provision was made ; and also that at that
time there existed neither in England or any of the States
any positive restriction upon the power to make retrospec-
tive laws for the decision of civil causes; the whole secu-
rity resting upon the sense of justice of the law-givers and
the maxims of the courts which induced them to struggle
hard against a construction that would cause a law to look
back upon past transactions. I propose, then, to examine,
first, the decisions of our own courts, remarking, however,
that before any reported case here, the prohibition by the
federal constitution, of State laws "impairing the obliga-
tion of contracts" and " *ex post facto* laws," had been ju-
dicially construed by the federal courts, which held that
laws affecting the remedy only were not laws impairing
the obligation of contracts, and that *ex post facto* laws re-
lated to crimes alone. See *Fletcher* v. *Peck*, 6 Cranch 87,
decided in 1810 ; 1 Kent's Com., (9th ed.) 413 ; *Calder* v.
*Bull*, 3 Dall. 386.

In examining the decisions of our own courts the in-
quiry is, what have been recognized as retrospective laws
for the decision of civil causes, and do the cases establish
a distinction between laws that affect rights and those
which affect remedies. And I hold that they clearly do
not make such distinction, but, on the contrary, decide
that laws affecting the remedy when applied to pending
suits are retrospective. The first reported case upon this
subject is *Merrill* v. *Sherburne*, 1 N. H. 199, decided in 1818,
in the light of the very able discussions in the celebrated
Dartmouth College Case. The act which was held to be
a violation of the article in question, authorized a *new trial*
in a pending suit, and was clearly a law relating only to the
remedy; and yet the court held it to be retrospective.
*Woodbury*, J., says : " The very nature and effect of a
new law is a rule for future cases," and acts " which look
back upon interests already settled, or events which

have already happened, are retrospective" and directly prohibited. In *Woart* v. *Winnick*, 3 N. H. 473, the act in question repealed the statute of limitations, and it was held to be unconstitutional in respect to all actions pending at the time, upon the ground that it was retrospective. *Richardson*, C. J., says that "a law for the decision of a cause is a law prescribing the rules by which it is to be decided—a law enacting the general principles by which the decision is to be governed; and a retrospective law for the decision of civil causes is a law prescribing the rules by which existing causes are to be decided, upon facts existing previous to the making of the law. Indeed, instead of being rules for the decision of future causes, as all laws are in their very essence, retrospective laws for the decision of civil causes are in their nature judicial determinations of the rules by which existing causes shall be settled upon existing facts." And this definition was repeated and affirmed in *Dow* v. *Norris*, 4 N. H. 18. In *Dunbarton* v. *Franklin*, 19 N. H. 257, it was held that a law making cohabitation and reputation proof of marriage, did not apply to past causes, and yet the law affected only the evidence, as in the case before us. The case of *Pickering* v. *Pickering*, 19 N. H. 389, is an express authority against the validity of a law authorizing several replications in pending suits. It is there said, by *Wilcox*, J., that "the provision against retrospective laws applies not only to those laws which relate immediately and primarily to the rights of persons and property, but to those subsidiary laws also, of which the object is to afford the means and prescribe the mode of enforcing the former." This was decided in 1849, and other cases, holding the same doctrine, and not yet reported, were decided about the same time. Among them was the case of *Wilson* v. *Stickney*, Coös County, January, 1848, in which I was counsel, and which held the same doctrines in relation to several replications.

The case of *Kennett's Petition* is a strong authority. No

private right was touched by the new law, and yet it was held that pending suits were presumed to be excepted. In *Colony* v. *Dublin,* and *Dickinson* v. *Lovell,* it was not necessary to decide whether the legislature had the power, because it was held that by well settled rules of construction the laws did not apply to pending suits. In both cases the law applied only to the remedy, and the language was broad enough to include pending suits; but in both the settled maxim of construction was applied to avoid a retrospective effect.

In New-Hampshire, then, as we have seen, the rule by which laws of this description are construed has been applied freely to such as affect the remedy only, and in the least objectionable form, as in *Colony* v. *Dublin,* and *Kennett's Petition,* where no private right was touched, and of course none vested. It is quite probable that in some of our cases references are made to decisions in other jurisdictions which recognize a distinction between laws affecting rights and those affecting remedies, but if so it has been done without adverting to the differences in their constitutional restrictions. I will venture, however, to say that no reported case can be found in New-Hampshire which decides that a law affecting the remedy is not retrospective as to pending suits, or that does not hold that it is retrospective—if the question arose.

It is conceded freely that the prohibition in the federal constitution against passing " a law impairing the obligation of contracts," has been so construed as to recognize a distinction between rights and remedies; but at the same time it is worthy of remark that this distinction, in the unqualified language in which it is sometimes expressed, has been looked upon by eminent jurists with serious apprehensions, as calculated greatly to impair the energy of the prohibition, and it cannot be disguised that the annunciation of this distinction has opened a wide door for the exercise of a legislative discretion that has already caused a great

diversity of legislation and of judicial decisions upon that subject. A striking example of this may be found in the stay-laws, and laws exempting property from execution. See 1 Kent's Com., (9th ed.) 467, and notes; 4 Kent's Com, 492, and notes; and *Quackenboss* v. *Danks*, 1 Den. 128; *Morse* v. *Gould*, 1 Kern. 281.

Indeed, no one can examine the laws and judicial decisions of the several States, where there is no other restriction than the one against impairing the obligation of contracts, without being struck with the great conflict and confusion that exist. From this, New-Hampshire, owing to the wise provision in her constitution, has been hitherto exempt. The cause of this conflict is to be found in the difficulty of defining the boundaries between rights and remedies. In fact, they run into each other with such irregular lines of approach, that the most eminent ability must despair of defining them. And in the end it must be left practically to legislative discretion to determine to what extent the rights of a party must be affected by a change of the remedy, to make that change unconstitutional. The difficulty of defining the boundaries between rights and remedies is fully recognized by Chief Justice *Shaw*, in *Wright* v. *Oakley*, 5 Met. 408, where he says it is often far from just to speak of rights and remedies as contradistinguished from each other; and the danger to be apprehended from the distinction is strongly stated by Chancellor *Kent*, in 1 Com. (9th ed.) 467, note, where he concludes by saying that "the better doctrine is that all effectual remedies, affecting the interests and rights of the owner, existing when the contract was made, become an essential ingredient of it, and are parcel of the creditor's right, and ought not to be disturbed." See also *Butler* v. *Palmer*, 1 Hill 325. And in the same spirit the constitution of New-Jersey of 1844, (art. 4, sec. 7,) declares "that the legislature shall not deprive a party of any remedy for enforcing a contract, which existed when the contract was

made." "This," Chancellor *Kent* says in the same note, "is a wise provision, giving additional and material securities to the sanctity and efficacy of contracts."

But whatever may be the construction of the provision "against impairing the obligation of contracts," I can conceive no just ground for holding that the same construction should be given to the provision in our Bill of Rights, and I am sure no such idea is recognized by the adjudged cases in our State. The prohibition of laws impairing the obligation of contracts does not affect laws in confirmation of such obligation, such as curing a defective attestation, or acknowledgment of a deed, and the like. This has been established by repeated decisions of the Supreme Court of the United States. But no such doctrine can be countenanced by the laws in this State, under our constitution. Besides, this prohibition leaves outside a vast mass of civil rights which have no protection whatever in the Federal constitution against unjust legislation. This omission is remedied in New-Hampshire by the twenty-third article of our Bill of Rights, which supplies what *Patterson*, J., in *Calder* v. *Bull*, said he ardently desired to have incorporated in the Federal constitution, and yet it has been sometimes contended that the restriction in New-Hampshire is substantially the same as under the Federal constitution. Our constitution forbids retrospective laws, both for the decision of civil causes and the punishment of offences. The prohibitions are in the same article and in the same terms, and may fairly be understood to apply to the same kind of laws in both cases. In respect to crimes, retrospective laws are usually known as *ex post facto* laws, but both terms have the same meaning when applied to crimes. By determining the meaning of *ex post facto* laws as understood when our constitution was formed, and which was then better defined than the other, we shall obtain light upon the meaning of the term retrospective

laws for the decision of civil causes. So it is held by *Richardson*, C. J., in *Woart* v. *Winnick*, 3 N. H. 474, and by *Woodbury*, J., in *Merrill* v. *Sherburne*, 1 N. H. 253. Indeed, it is admitted that retrospective laws for the punishment of offences are, properly speaking, *ex post facto* laws.

What, then, is the true signification of the term *ex post facto* laws, or retrospective laws for the punishment of offences?

The provision in the United States constitution against *ex post facto* laws came on to be considered in *Calder* v. *Bull*, 3 Dallas 386, and in that case *Chase*, J., gives a definition of the term which has been very generally approved, and is quoted with approbation by *Richardson*, C. J., in *Woart* v. *Winnick*. Judge *Chase* lays it down that any law which makes an action done before the passing of the law and which was innocent when done, criminal, and which punishes such action, or which aggravates a crime and makes it greater than it was when committed, or which alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offence, in order to convict the offender, is an *ex post facto* law, and in his opinion the provision was introduced to guard against such exercise of power as, in times of violence and commotion, had been exercised by the British parliament in order to procure the conviction of offenders; such as declaring that to be treason which was not treason when committed, violating the rules of evidence to supply a deficiency of legal proof, by admitting one witness when the existing law required two; by receiving evidence without oath, or the oath of a wife against her husband, or other testimony which the courts of justice would not admit. This was a decision of the highest court of the United States in 1798, and it determined that the provision related only to crimes; and throughout the learned and able opinions of the judges, the term retrospective laws was treated as synon-

ymous with the term *ex post facto* laws, and so it was in
the numerous citations from the constitutions of several
of the States, and this definition is fully recognized in
Story on the Constitution 486. Retrospective laws,
or *ex post facto* laws for the punishment of offences,
according to this definition, which has ever since been
fully approved by both Federal and State courts, including
our own, were such as looked back upon past transactions
of a criminal nature, and among other things altered the
rules of evidence, and received less or different testimony
than the law required before. It was contended by able
judges that the term ought to be applied to civil causes.
See opinion of *Johnson,* J., in note, 2 Peters 681, and
Story on the Constitution 485. *Patterson,* J., in that
case said he had an ardent desire to have extended
the provision to retrospective laws in general, saying there
was neither policy nor safety in such laws, and that retro-
spective laws of every description neither accord with
sound legislation nor the fundamental principles of the
social compact. If, then, retrospective laws for the pun-
ishment of offences embrace not only those which affect
the nature of the offence, but such as alter the rules of
evidence, and that was understood at the adoption of our
constitution, it is difficult to avoid the conclusion that the
same term applied in the same sentence to the decision of
civil causes, should receive the same interpretation, unless
there was at the time a different meaning attached to it,
and this, I think, cannot be shown. So far as respects
civil causes, the reported cases prior to our constitution
are few, but the maxim " *Nova constitutio, futuris formam
debit imponere non præteritis,*" seems to have been universally
recognized. Bracton, Lib. 4, Fol. 238; Bac. Abr., Statutes,
C; Co. Litt. 292. And in that maxim no distinction is made
between rights and remedies, the general proposition being
that a statute should have no retrospect, (as in Bac. Abr.,
above cited,) but should commence *in futuro,* (as in 1 Bl.

Rich v. Flanders.

Com. 46, and Bac. Abr., above cited, and notes;) and I find no English case, either before or since the adoption of our constitution, that is decided upon the ground of a distinction between the right and the remedy; all turning in fact upon the question whether the purpose to retrospect was clearly manifested—there being no doubt of the power of their omnipotent parliament. In the few early cases which I find, no such distinction is made, but the maxim of construction referred to has been applied to the statute of frauds, which regulates the proof of a promise, as in *Gilmore* v. *Shuter*, 2 Mod. 310; to a law which remits a penalty on a subsequent payment of stamp duties, as in *Couch* v. *Jeffries*, 4 Burr. 2460, decided in 1769, and since *Gilmore* v. *Shuter*, (the case of *Couch* v. *Jeffries*, corresponding in principle to *Dow* v. *Norris*, 4 N. H. 16,) and also to a law requiring the registry of an assignment of South Sea stock, as in *Wilkins* v. *Meyer*, Lord Raymond 1350; and in this case *Raymond*, J., speaks of the law as *ex post facto*. So at a later date the same rule was applied to a law changing a statute of limitations pending a suit, as in *Paddon* v. *Bartlett*, 3 A. & E. 884, and to a law making a copy of an entry of a book at the hall of the stationers' company *prima facie* evidence of proprietorship, as in *Chappell* v. *Purdy*, 12 M. & W. 303. In this case Lord *Abinger* said he thought the legislature "never intended by an *ex post facto* law to give one party to a suit already commenced a great advantage over his adversary." These cases show that in England the maxim that laws are to have no retrospect, has been applied to remedies as well as rights; and although in these cases the interests of parties were likely to be affected, the same is true in respect to the law before us. It would be difficult, I think, to point out any solid distinction between laws that provide that parol evidence shall or shall not be proof of a promise, or that a copy of an entry shall or shall not be *prima facie* proof of proprietorship, and laws that provide that a

party may or may not prove his case by his own testimony. If no such distinction exists, then it must be admitted that the early decisions of the English courts strongly sustain the views I have expressed.

So in other States, in determining what is merely retrospective, the distinction between rights and remedies is not regarded, though it is otherwise in deciding what impairs the obligation of contracts.

In *Perkins* v. *Perkins*, 7 Conn. 558, a law granting appeals is not to retrospect unless so declared in the most unequivocal manner.     In *Watkins* v. *Haight*, 18 Johns. 139, a law limiting a writ of error was not allowed to affect a judgment rendered before the law.   So the maxim was applied to a law prescribing what should be evidence of advancement and held not to retrospect; *Whitman* v. *Hapgood*, 10 Mass. 439 ; so also to a law repealing a limitation of an application to vacate a judgment; *Briggs* v. *Hubbard*, 19 Vt. 86 ; to a law for the relief of poor debtors, holding that it had no operation upon suits pending, or upon any process or proceeding arising out of them; *Hastings* v. *Lane*, 15 Maine 134 ; to a law granting a rehearing in case of a probate decree.   *Stewart* v. *Davidson*, 10 Sm. & M. 351.   There are cases touching the remedy alone, and yet held to be retrospective laws in the only sense in which the term was applied in civil causes before our constitution.   Before that time they were discountenanced by rigid rules of construction, but now in New-Hampshire by positive prohibition.   Retrospective laws, as then understood, from all the evidence before us, were such as looked back upon past transactions, reaching both rights and remedies, as plainly understood by *Perley*, C. J., in *Dickinson* v. *Lovell*, and as such were for the first time, as it would seem, positively prohibited by the New-Hampshire constitution of 1784 ; and whatever distinction has since been recognized between rights and remedies has grown out of the positive prohibition of laws impair-

ing the obligation of contracts, in the Federal constitution, and has nothing to do with retrospective laws in general. Before that prohibition the distinction was not known, and there was no occasion for it, as the power to pass either kind of law was unquestionable.

Much has been said in regard to a distinction between rights vested and not vested, as furnishing a solution of this question; and it is claimed that there can be no vested right to any particular remedy. If by this it is understood that there is no limitation upon the power of a legislature to deal with remedies, it is, of course, under our constitution, an unfounded assumption. If it be meant that the legislature has power over remedies, so far as it may be exercised without affecting existing rights, as by changing the tribunal and rules of practice, and the like, there may be no especial objection to it. But if the term *vested right* is used to denote a right that cannot, under the constitution, be taken away, it is quite obvious that no definition can be framed that will suit the different constitutional restrictions in different governments. In England, parliament is omnipotent. In the United States, congress can make laws "impairing the obligation of contracts;" but the States are prohibited, and in respect to most of them there is no other restriction. In New-Hampshire, however, the prohibition of retrospective laws is general.

Of course no general definition of the term vested rights can serve as a test of the legislative power in these different jurisdictions. When a right accrues, the remedies existing at the time are essential ingredients of it, and cannot, under our constitution, be taken away or substantially impaired. It is even held by *Story*, (Commentaries on the Constitution 505,) that a law which affects the evidence of a contract impairs its obligation, and he says the manner and degree in which it is affected in no respect influence the conclusion. If a suit has been brought to enforce that right in any of the existing forms, it cannot by a

subsequent law, under our constitution, rightfully be defeated or clogged by restrictions, so as to take away or diminish its efficiency, and the right to such remedy may then be regarded as fixed and vested.

In the State of Maine, as we have seen, it is otherwise, and a party it seems may be turned out of court and subjected to costs by a "legislative judgment," when without such interference he must have prevailed. The case in Maine was debt for an escape, and therefore the law was not within any constitutional restriction, and hence the decision. In other jurisdictions, with similar constitutional restrictions, we find similar laws and judicial decisions, and we find it distinctly held that their legislatures may make retrospective laws in civil cases, if they do not impair the obligation of contracts; as in *Bangher* v. *Wilson,* 9 Gill 299, where the court says "that their statute books are full of retrospective laws, healing imperfect deeds or validating imperfect acknowledgments," and all sustained by the courts. So in *Baltimore & Susquehannah Railroad* v. *Nesbit,* 10 Howard 401, it is held that the State governments have a general power to make retrospective laws, and so in *Charles River Bridge* v. *Warren Bridge,* 11 Peters 420; and even may interfere with contracts, so far as to make valid a void contract. *Satterlee* v. *Matthewson,* 2 Peters 380. And it is quite clear that it must be so, when we consider that before the adoption of the United States constitution the States had the power, and often exercised it, of passing confiscation laws and bills of attainder; Story on the Constitution 491, 7 Dane Abr. 345; and even enforced the latter after the death of the person attainted, as in *Jackson* v. *Stokes,* 3 Johns. 151. It has been said that other States, though having no written constitutional restriction like ours, have been generally governed by the same principles, and therefore their decisions are freely quoted as authority here. But a slight attention to the laws and decisions of other

States will show clearly that this is a great mistake, and that in fact most of the decisions under the twenty-third article of our Bill of Rights, whether made by our own or the United States courts, are directly opposed to the decisions under the constitutions of the other States. Some of the decisions I will now proceed to state. In *Satterlee* v. *Matthewson,* 2 Pet. 380, it was held that a law of Pennsylvania, providing that the relation of landlord and tenant should be held to exist between Connecticut settlers and Pennsylvania claimants, the same as between other citizens of the State, and applying it expressly to pending suits, was valid and binding in such suits; and this is directly opposed to the doctrine of *Clark* v. *Clark,* 10 N. H. 380, and *Dunbarton* v. *Franklin,* 19 N. H. 257. So it is held in that case that a State law may make valid a void contract, and in *Wilkinson* v. *Leland,* 2 Pet. 627, it was held that the legislature of Rhode-Island, by resolution, may confirm a void conveyance—both utterly repugnant to the whole course of our judicial decisions, being both retrospective and judicial. The same may be said of *Watson* v. *Miner,* 8 Peters 110, holding a law of Pennsylvania valid which confirmed a deed of the wife, void for want of proper acknowledgment, forty years after it was made, and after her death and the descent of the land to her heirs. The same doctrine is held in *Barnett* v. *Barnett,* 15 Serg. 72, and *Yate* v. *Stoolfors,* 16 Serg. 35. So, the decision setting aside by resolution of the legislature of Connecticut a probate decree, and granting a new trial, (*Calder* v. *Bull,*) is opposed to *Merrill* v. *Sherburne;* so is the case in Maine touching the proof of a protest of a note, the court holding that the legislature may prescribe what shall be evidence of a fact, "whether written or oral," and apply it to past matters; and if so it can repeal the statute of frauds as to pending suits. The doctrine of this case is opposed to *Dunbarton* v. *Franklin.* So a law changing the mode of assessing damages, and designed to take away a penalty, (*Oriental*

*Bank* v. *Freese,* 18 Maine 109,) is in opposition to *Dow* v. *Norris,* 4 N. H. 16, and *Roby* v. *West,* 4 N. H. 285. So, changing the limitation of an application for a review where the original time had expired ; *Colby* v. *Dennison,* 36 Maine 13; is opposed to *Woart* v. *Winnick,* 3 N. H. 473. So, granting a probate appeal by resolution ; *Dean* v. *Dean,* 2 Mass. 150; is opposed to *Merrill* v. *Sherburne*; and a license to sell the real estate of minors, as in *Rice* v. *Parkman,* 16 Mass. 326, is directly opposed to Opinion of Judges, 4 N. H. 572. So, authorizing a warrant to abate a nuisance, and applied to a pending suit; *Bemis* v. *Clark,* 11 Pick. 452; is opposed to *Kennett's Petition,* 24 N. H. 139. So a retrospective betterment act was held good, in *Brown* v. *Stow,* 4 Vt. 37, though contrary to the decision under our Bill of Rights in *Society* v. *Wheeler,* 2 Gall. 105, per *Story,* J. A marked example of the difference between our decisions and those of other courts is exhibited in the cases which hold that on the repeal of a penal statute the penalty is gone, even though a suit be pending for it; *Butler* v. *Palmer,* 1 Hill 325–330, and cases cited; 5 Cranch 381; 6 Cranch 329; while in *Dow* v. *Norris,* 4 N. H. 16, it was held that such effect was repugnant to the twenty-third article of the Bill of Rights, and so in *Roby* v. *West,* 4 N. H. 285.

The cases of *Bangher* v. *Nelson,* 9 Gill 299, and *Railroad* v. *Nesbit,* 10 Howard 401, are strong authorities on this point, and so is Story on the Constitution, secs. 711, 712. In Massachusetts, a law confirming an assignment of prison limits, so as to make an act which was an escape when committed, no escape, was held valid ; *Walter* v. *Bacon,* 8 Mass. 468 ; *Locke* v. *Dane,* 9 Mass. 361 ; even though made while a suit was pending ; *Patterson* v. *Philbrook,* 9 Mass. 151 ; also a law authorizing a divorce for an act committed before, *West* v. *West,* 2 Mass. 233, which is directly opposed to *Clark* v. *Clark.* In Connecticut it is distinctly held that retrospective laws may be

made, and therefore laws making valid defective marriages, contrary to *Dunbarton* v. *Franklin*, and curing a void extent, were held valid. *Goshen* v. *Stonington*, 4 Conn. 209; *Beach* v. *Walker*, 6 Conn. 190. And it is held that if they are explicitly retrospective they may impair vested rights, unless clearly unjust. See cases above, and *Mathers* v. *Clapman*, 6 Conn. 54. In the later case of *Bridgeport* v. *Housatonic R. R.*, 15 Conn. 495, it was held that "retrospective laws are not void, because retroactive," and though they generally have many unjust features, the courts are not the guardians of the legislature; and in *Andrews* v. *Russell*, 7 Blackf. 374, a law was held good which made valid notes that were void for usury when given. So in *Boston* v. *Cummins*, 16 Georgia 102, it was held that a marriage settlement was void as against creditors, for want of a record required by a law subsequently made, the court saying that "neither by the civil law, from which most of the continental systems are borrowed, nor the English law, upon which ours is founded, is retrospective legislation forbidden." It is a matter of discretion with the legislature, under the restrictions of the fundamental compact, how far it may be expedient to enact such law;—the general assembly acting within the pale of the constitution of the United States, and of this State, has the same omnipotence ascribed to the English parliament. So, in *Baker* v. *Hernden*, 17 Georgia 568, it was held a law declaring the construction of the 4th section of the statute of frauds was valid as to contracts made before. So, under the Ohio constitution of 1802, it was held that retrospective laws which violated no principle of natural justice are not forbidden, and the court say "we do not favor retrospective laws, and think they are wisely forbidden in the new constitution." *Cuyahoga Falls Association* v. *McCaughey*, 2 Ohio State Rep. 152, and see *Head* v. *Warde*, 1 J. J. Marshall 284. In England, Blackstone says, (1 Com. 91,) "that there is no court that has power to defeat the intent of the

legislature when couched in such evident words as leave no doubt whether it was the intent of the legislature or no," and he puts the strong case of a law authorizing a man to try his own cause.

Many more cases of a similar character might be cited, but enough is done to show a radical difference between our constitutional restrictions and those of other States, and therefore the decisions of those States do not apply in this case with their usual force. These cases also furnish a few examples of the vast variety of words by which, under the guise of modifying the remedies, the vital interests of parties may be struck down. Indeed it is only by some indiscreet legislation that the civil rights of parties are in danger from retrospective laws, inasmuch as no direct attack upon such rights would for a moment be tolerated. A decent respect for the opinions of mankind will therefore confine such efforts to such general legislative propositions as will not arouse the attention to the injustice which is meditated, and at the same time will incidentally accomplish the desired object, by a blow which, though unseen, is nevertheless vital. To guard against such insidious legislation, more than the *direct* attack upon rights, was the purpose, as I think, of the provision under consideration. To the present time the decisions under it in our courts have been uniform, and the rules which have governed them have been simple and easy of application, giving to our decisions a stable consistency which cannot elsewhere be found.

The introduction of distinctions growing out of provisions wholly unlike ours, although placed by my brethren in the most favorable light, and advocated with great ability and force, I think is much to be regretted. It is quite likely, I fear, to furnish the foundation for numerous legislative jobs, promoted by combinations of desperate suitors, who, under pretext of improving the remedial laws of the State, seek at the hands of the legislature that

*judicial judgment* which they despair of obtaining from the courts under the rules existing when the suits were brought. See the remark of *Woodbury*, J., in *Merrill* v. *Sherburne*, 1 N. H. 215. In the light of these views the wisdom of the maxim which requires an unmistakable expression of purpose to give a retrospective effect to a law, is very apparent ; otherwise the real purpose of such a law would generally be so obscured as not to attract the attention of the legislators who passed it.

The construction of the provision against " impairing the obligations of contracts" has no binding force in respect to the prohibition in our Bill of Rights, and has never yet been applied here ; and there is some reason for supposing that if the question were *res nova* a different construction of the provision in the Federal constitution would be given, especially when we consider that the obligation of a contract consists in the law by which it is enforced, and that to impair that obligation in any degree, however minute, would be an infraction of that provision. We should be slow, therefore, I think, to engraft this construction upon a rule which is not only much more simple, but vastly more comprehensive. Especially should it be so in respect to actions brought upon the faith of existing laws, where the party has begun to exercise a right which the law gives him, and has incurred expense and liability in doing it. In such case it would be unjust and oppressive to take away or impair the remedy he has chosen, and the books are full of denunciations of such laws. In our own courts there are at least the cases of *Merrill* v. *Sherburne*, *Woart* v. *Winnick*, *Pickering* v. *Pickering*, *Colony* v. *Dublin*, and *Dickinson* v. *Lovell*.

I am, therefore, upon these principles, brought to the conclusion that upon no sound rule of construction can the law under consideration be made to apply to pending suits, and also that under our constitution the legislature has not the power so to affect them. I have not here con-

sidered the question of the power to change the remedies for existing causes of action, where no suit has been brought, because my views were prepared for a suit which was pending at the passage of the law; and besides, the construction given by the majority of the court applies to pending suits, and if that is established the other question is necessarily included.

DOE, J., and NESMITH, J., concurred in the opinion of SARGENT, J.